No. 2--05--1198                               filed: 10/26/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JOANN M. COGLEY, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 05--AR--1374 |
| | ) | |
| DAIMLERCHRYSLER CORPORATION | ) | |
| and ELMHURST DODGE, INC., | ) | Honorable |
| | ) | Terence M. Sheen, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the opinion of the court:

On April 20, 2005, plaintiff, Joann M. Cogley, filed a three-count complaint in the circuit court of Du Page County against defendants, DaimlerChrysler Corporation (DaimlerChrysler) and Elmhurst Dodge, Inc. (Elmhurst Dodge), seeking relief under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (the Magnuson-Moss Act) (15 U.S.C. §2301 et seq. (2000) for breach of express and implied warranties on a motor vehicle manufactured by DaimlerChrysler and sold to plaintiff by Elmhurst Dodge. Defendants moved to dismiss pursuant to section 2--619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2--619(a)(5) (West 2004)) on the basis that plaintiff had not filed her complaint within the applicable four-year limitations period. The trial court granted the motion, and plaintiff brought this appeal. We affirm in part, reverse in part, and remand.

According to her complaint, plaintiff purchased a Dodge Caravan from Elmhurst Dodge on or about March 31, 2000. The vehicle was sold with a written limited warranty from the manufacturer. The warranty provided, inter alia, a 3-year/36,000-mile "Basic Warranty" described, in pertinent part, as follows:

"The Basic Warranty covers the cost of all parts and labor needed to repair any defective item on your vehicle that was supplied by DaimlerChrysler Motors Corporation--that is, defective in material, workmanship, or factory preparation. There is no list of covered parts since the only exception is tires. You pay nothing for these repairs. These warranty repairs or adjustments--including all parts and labor connected with them--will be made by your dealer at no charge, using new or remanufactured parts."

Plaintiff alleged that she began to experience various problems with the vehicle shortly after the purchase and that, between April 2002 and March 2005, she took the vehicle to the "Manufacturer's authorized agent/dealer, seller" for service on at least nine occasions. Eight of those visits related to problems with the vehicle's serpentine drive.

Count I of plaintiff's complaint alleged that defendants breached the written warranty. Count II alleged that defendants breached an implied warranty of merchantability under section 2--314 of the Uniform Commercial Code (UCC) (810 ILCS 5/2--314 (West 2004)). Count III alleged that plaintiff had revoked acceptance of the vehicle.

Plaintiff argues on appeal that the trial court erred in dismissing counts I and III of her complaint. She does not challenge the dismissal of the claim for breach of an implied warranty of merchantability (count II). We begin our analysis by noting that an order granting a motion to dismiss under section 2--619 of the Code is reviewed de novo. Zahl v. Krupa, 365 Ill. App. 3d 653,

658 (2006). Turning to the merits, we observe that the Magnuson-Moss Act "was designed to protect consumers from deceptive warranty practices by establishing standards for the form and content of written warranties." Lysek v. Elmhurst Dodge, Inc., 325 Ill. App. 3d 536, 539 (2001). The Magnuson-Moss Act also provides that a consumer who is damaged by a warrantor's failure to comply with an obligation under the Act or under a written or implied warranty may bring a suit for damages and other legal and equitable relief. 15 U.S.C. §2310(d)(1) (2000). The action may be brought in state court or, if the amount in controversy reaches a certain level, in federal court. 15 U.S.C. §2310(d)(1), (d)(3) (2000). For purposes of the Magnuson-Moss Act, "written warranty" means:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. §2301(6) (2000).

There is a split of authority among the divisions of the First District on the question of when the statute of limitations begins to run on a Magnuson-Moss Act claim based on the sort of written warranty at issue in this case--one in which a manufacturer or seller promises to repair goods rather than (or in addition to) promising that they are free from defects or will perform in a certain way. In Cosman v. Ford Motor Co., 285 Ill. App. 3d 250 (1996), the fourth division considered the timeliness of a Magnuson-Moss Act claim by the purchasers of a motor home covered by two warranties. One of the warranties was a 6-year/60,000-mile written limited warranty that provided, " 'Ford warrants that your selling dealer will repair, replace, or adjust all parts (expect [sic] tires) that are found to be defective in factory-supplied materials or workmanship.' " Cosman, 285 Ill. App. 3d at 257. The plaintiffs purchased the motor home in September 1989 and first experienced problems with it in June 1990. After repeated unsuccessful attempts by the dealer to repair the problems, the plaintiffs filed suit in April 1994. The trial court concluded that a Magnuson-Moss Act claim is subject to the four-year statute of limitations set forth in section 2--725 of the UCC, which provides:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of

action accrues when the breach is or should have been discovered." 810 ILCS 5/2--725 (West 2004).

The trial court in Cosman reasoned that the cause of action accrued upon delivery of the motor home to the plaintiffs in September 1989 and that their suit filed in April 1994 was untimely. The appellate court observed that "[t]he problem with this analysis and disposition is immediately apparent: the [plaintiffs] are holding warranties that have not expired, but are unable to legally enforce them." Cosman, 285 Ill. App. 3d at 253. The Cosman court agreed with the trial court that section 2--725 was the applicable statute of limitations. However, the court disagreed with the trial court's conclusion as to when the cause of action accrued.

The Cosman court observed that, because the Magnuson-Moss Act does not include a statute of limitations, federal common law dictated that courts apply the state statute of limitations for the state law cause of action most analogous to the Magnuson-Moss Act claim. Cosman, 285 Ill. App. 3d at 255, citing DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983). The Cosman court concluded that a claim for the breach of a sale contract was most analogous to the plaintiffs' Magnuson-Moss Act claim. Nonetheless, the court reasoned that the plaintiffs' claim was not for a breach of warranty within the meaning of the UCC and therefore the rule governing the accrual of breach of warranty claims (as distinguished from other breach of contract claims) did not apply. Under the UCC:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." 810 ILCS 5/2--313(1) (West 1994).

Thus, the definition of "express warranty" under the UCC is narrower than the definition of "written warranty" under the Magnuson-Moss Act. The former relates to the quality or performance of goods, whereas the latter also extends to promises to repair the goods. The Cosman court noted that a mere promise to repair goods did not fit within the UCC definition of a warranty. Although such a promise "relates to the goods," the goods cannot "conform" to the promise. Cosman, 285 Ill. App. 3d at 259; accord 1 F. Miller, Hawkland Uniform Commercial Code Series §2--313:4 (2002) ("express warranties relate exclusively to quality, description, and title of the goods and have nothing to do with the other terms of the contract"). (We will sometimes refer to a UCC-type warranty as a "quality warranty" and a written promise to repair as a "repair warranty.") Cosman held that the four-year limitations period for an action on a repair warranty begins to run when that promise to repair is breached, not on the date of delivery of the goods.

In Nowalski v. Ford Motor Co., 335 Ill. App. 3d 625 (2002), the third division of the First District rejected the Cosman court's analysis. The Nowalski court agreed that the UCC statute of limitations was applicable to a promise to repair a vehicle, but held that the statute of limitations began to run upon delivery of the vehicle. Unlike the 6-year/60,000 mile warranty in Cosman, the warranty in Nowalski was for 3 years or 36,000 miles. The Nowalski court observed that this warranty--unlike the one in Cosman--did not extend past the four-year limitations period. Nowalski

reasoned that Cosman read paragraph (2) of section 2--725 of the UCC, which stated that "[a] breach of warranty occurs when tender of delivery is made," out of existence. 810 ILCS 5/2--725 (2) (West 2004). The Nowalski court accused the Cosman court of engaging in "creative editing, unsupported by statute or decision." Nowalski, 335 Ill. App. 3d at 632.

Most recently, the fifth division of the First District confronted the issue, in Mydlach v. DaimlerChrysler Corp., 364 Ill. App. 3d 135 (2005), leave to appeal granted, No. 102588 (September 27, 2006). The Mydlach court agreed with the reasoning in Cosman and rejected Nowalski. The Mydlach court reasoned:

> "[C]ontrary to the Nowalski court's assertion, Cosman does not read section 2--725(2) of the UCC out of existence. Rather, Cosman recognizes that section 2--725(2), which is based upon a definition of 'warranty' that does not include promises to repair, is not applicable in light of the provisions of the Act." Mydlach, 364 Ill. App. 3d at 148.

We agree with the reasoning in Cosman and Mydlach. Repair warranties (which are warranties under the Magnuson-Moss Act but not the UCC) are different from quality warranties (which are warranties under both statutes). The above passage from Mydlach cogently identifies the flaw in Nowalski's reasoning.

In this case, the trial court did not reach its decision by choosing among the First District decisions. Rather, it concluded that it was bound by this court's decision in Nelligan v. Tom Chaney Motors, Inc., 133 Ill. App. 3d 798 (1985). In Nelligan, the plaintiff alleged, in pertinent part, that in January 1977 she purchased a Volkswagen Rabbit:

> "[I]n reliance on advertisements, promises and warranties published by defendants; that on or about August 1978, plaintiff discovered the vehicle was defective, unsound and wholly

unfit for the use for which it was purchased in the following manners: (a) faulty and defective emission control system; (b) faulty and defective engine; (c) faulty and defective carburetor; and (d) faulty and defective repair; that plaintiff retained the motor vehicle on the assumption that defendants would repair or cure the defects; and that in cooperating with defendants, plaintiff returned the motor vehicle on numerous occasions at plaintiff's expense and defendants failed to repair, fix and cure the defective product." Nelligan, 133 Ill. App. 3d at 800.

No written warranty was attached to the complaint. The defendants successfully moved to dismiss on the basis that the lawsuit, filed in November 1983, was untimely.

On appeal, the plaintiff in Nelligan argued that the statute of limitations did not bar her breach of warranty claims, "because the breach of warranty was discovered within the four-year period before plaintiff filed suit and did not occur when tender of delivery was made in 1977, as there was never a conforming tender of delivery." Nelligan, 133 Ill. App. 3d at 801. This court rejected the argument, noting that the language of the UCC "clearly proscribes the application of the discovery rule in breach of warranty cases" (Nelligan, 133 Ill. App. 3d at 802), and that holding that only a "conforming delivery" triggers the statute of limitations "would lead to the absurd result that the period of limitations never begins to run in cases such as this where a plaintiff takes delivery and retains possession of goods for a considerable period of time before notifying the seller of possible defects" (Nelligan, 133 Ill. App. 3d at 802). This court also rejected the plaintiff's argument that the warranties guaranteed future performance of the vehicle so that, under section 2--725(2), the cause of action did not accrue until the breach was discovered. This court noted that the statutory discovery provision applies only when there has been an explicit guarantee of future performance.

Because the plaintiff had not attached a copy of a written warranty, she could not prevail on this basis. This court further held that a warrantor's attempts to repair a defective product do not extend the warranty to future performance. However, this court had no occasion to consider the question raised in the present appeal: when does a cause of action on a repair warranty accrue? The plaintiff in Nelligan did not claim that her lawsuit was based on a repair warranty, and there is nothing in our recitation of the facts of the case to suggest that a repair warranty was at issue. Accordingly, Nelligan does not govern the disposition of the issue before this court, and the trial court's reliance on Nelligan was misplaced.

Defendants' reliance on two other decisions--Jones v. Ford Motor Co., 347 Ill. App. 3d 176 (2004), and Ridle v. Sprayrite Manufacturing Co., 198 Ill. App. 3d 597 (1990)--as support for the trial court's ruling is similarly misguided. The issue in Jones--whether the plaintiff had established a basis for equitable tolling of the statute of limitations during the pendency of an arbitration proceeding--has no bearing on the question raised in this case. Ridle is also inapposite. The two issues in that case were (1) whether tender of delivery of a crop sprayer occurred when it was initially delivered to the buyer or when it was redelivered to the buyer after having its engine rebuilt; and (2) whether the seller had made any explicit warranty concerning future performance of the equipment. Like Nelligan, Ridle does not address the question of when a cause of action on a repair warranty accrues.

Defendants argue that the Mydlach court erred in concluding that the statute of limitations does not begin to run until a manufacturer has a reasonable opportunity to cure a defect in the product. We need not decide the issue, however. Even assuming the statute of limitations begins to run when a product is first brought in for repair, plaintiff's repair warranty claim would be timely.

Here, plaintiff alleged that she first took the vehicle in for repair in April 2002. Accordingly, her lawsuit filed in April 2005 was within the four-year limitations period.

Defendants also contend that the warranty in question was only a "limited warranty" within the meaning of the Magnuson-Moss Act and was therefore not subject to the statute's minimum requirements for "full warranties." See generally 15 U.S.C. §2303(a), 2304 (2000). According to defendants, in cases arising under limited warranties, the Magnuson-Moss Act serves only as a "conduit" for claims arising under state law. Even if this statement is true, we fail to see how it has any bearing on the question of when the statute of limitations begins to run. As seen, all of the relevant Illinois decisions are in agreement that the Magnuson-Moss Act borrows the UCC's statute of limitations. This would appear to be true whether state law or federal law governs the substance of the claim. In other words, for statute of limitations purposes, it should make no difference whether the Magnuson-Moss Act provides the substantive law or merely serves as a conduit for a state law claim.

Defendants also complain that Cosman and Mydlach incorrectly held that the portion of section 2--725(2) of the UCC providing that "[a] breach of warranty occurs when tender of delivery is made" is inapplicable to a limited warranty. 810 ILCS 5/2--725(2) (West 2004). Neither case stands for that proposition. As previously discussed, both cases held that a repair warranty is not a "warranty" within the meaning of the quoted language. In other words, the operative distinction in Cosman and Mydlach is not between full warranties and limited warranties, but between repair warranties and quality warranties.

Defendants also make the astonishing claim that Mydlach erred in holding that a private right of action exists under the Magnuson-Moss Act. Defendants contend that the holding is

"unprecedented and *** nonsensical" and is not supported by "a scintilla of authority." The assertion is nothing short of absurd. Section 2310(d)(1) of the Magnuson-Moss Act plainly states that "[s]ubject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. §2310(d)(1) (2000). Subsection (a)(3) requires resort to informal dispute settlement procedures prior to filing a lawsuit in some circumstances. 15 U.S.C. §2310(a)(3) (2000). Subsection (e) requires a plaintiff to give a warrantor a reasonable opportunity to cure a breach of a warranty before filing a lawsuit other than a class action suit or a lawsuit subject to subsection (a)(3). 15 U.S.C. §2310(e) (2000). The Magnuson-Moss Act clearly permits an aggrieved consumer to file a lawsuit under its auspices.

In view of the foregoing, the trial court erred in dismissing plaintiff's written warranty claim (count I) as untimely. Count III of her complaint seeks the remedy of revocation of acceptance based, at least in part, on the breach of the written warranty. Because counts I and III involve the same underlying breach, the same statute of limitations analysis applies to both counts. Accordingly, the trial court erred in dismissing count III.

For the foregoing reasons, we affirm the dismissal of count II of plaintiff's complaint, reverse the dismissal of counts I and III, and remand the cause for further proceedings.

Affirmed in part and reversed in part; cause remanded.

BOWMAN and BYRNE, JJ., concur.