Docket No. 102588.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

LUCY MYDLACH, Appellee, v. DAIMLERCHRYSLER
CORPORATION, Appellant.

*Opinion filed September 20, 2007.*

JUSTICE FITZGERALD delivered the judgment of the court,
with opinion.

Chief Justice Thomas and Justices Freeman, Kilbride, Garman,
Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff, Lucy Mydlach, filed a three-count complaint in the circuit
court of Cook County against defendant, DaimlerChrysler
Corporation, alleging claims under the Magnuson-Moss
Warranty–Federal Trade Commission Improvement Act (Magnuson-
Moss Act or Act) (15 U.S.C. §2301 *et seq.* (1994)). The circuit court
granted defendant's motion for summary judgment, holding that the
claims were time-barred under the four-year statute of limitations
contained in section 2–725 of the Uniform Commercial Code–Sales
(UCC) (810 ILCS 5/2–725 (West 2006)). The appellate court
affirmed in part and reversed in part. 364 Ill. App. 3d 135. For the
reasons discussed below, we affirm in part and reverse in part the

judgment of the appellate court and remand the matter to the circuit court for further proceedings.

## BACKGROUND

On June 20, 1998, plaintiff purchased a used 1996 Dodge Neon, manufactured by defendant, from McGrath Buick-Nissan (McGrath) in Elgin, Illinois. The vehicle was originally put into service on June 24, 1996, with a three-year/36,000-mile limited warranty. The warranty provided, in relevant part, as follows:

> "The '**Basic Warranty**' begins on your vehicle's **Warranty Start Date** which is the **earlier** of (1) the date you take delivery of your new vehicle, **OR** (2) the date the vehicle was first put into service ***.
>
> The '**Basic Warranty**' covers the cost of all parts and labor needed to repair any item on your vehicle (except as noted below) that's defective in material, workmanship, or factory preparation. You pay nothing for these repairs.
>
> The '**Basic Warranty**' covers every Chrysler supplied part of your vehicle, **EXCEPT** its tires and cellular telephone. ***
>
> * * *
>
> These warranty repairs or adjustments (parts and labor) will be made by your dealer at no charge using new or remanufactured parts.
>
> * * *
>
> The '**Basic Warranty**' lasts for 36 months from the vehicle's Warranty Start Date **OR** for 36,000 miles on the odometer, whichever occurs first." (Emphasis in original.)

At the time of plaintiff's purchase in 1998, the car's mileage was 26,296. Thus, the warranty had approximately one year or 10,000 miles remaining.

Beginning July 7, 1998, plaintiff brought the car to McGrath and another authorized dealership several times for a variety of problems, including a recurring fluid leak. Plaintiff claimed that the dealerships' repair attempts were unsuccessful and, as a result, she could not use the vehicle as intended. Plaintiff ultimately filed suit against defendant

on May 16, 2001, seeking legal and equitable relief, as well as attorney fees and costs, under the Magnuson-Moss Act. Plaintiff alleged breach of written warranty (count I), breach of the implied warranty of merchantability (count II), and revocation of acceptance (count III).

The case initially proceeded to arbitration, where a decision was entered in favor of defendant. Plaintiff rejected the arbitrators' decision and the case was returned to the trial court. After further discovery, defendant filed a motion for summary judgment. Defendant argued that counts I and II of plaintiff's complaint were subject to the four-year statute of limitations found in section 2–725 of the UCC (810 ILCS 5/2–725 (West 2006)) and that, as provided by section 2–725(2), the statute of limitations commenced upon "tender of delivery" of the vehicle to its original purchaser in June 1996. Thus, according to defendant, plaintiff's suit, filed in May 2001, was outside the four-year limitations period. With respect to count III, defendant argued that plaintiff was not entitled to seek revocation of acceptance because no privity existed between plaintiff and defendant, and because plaintiff could not prove the underlying breach of implied warranty claim.

Plaintiff responded that her claims were not time-barred because the "tender of delivery" referenced in the UCC was the tender of delivery to her, and not to the original purchaser. Plaintiff also argued that a lack of privity is not a bar to a claim for revocation of acceptance against a manufacturer who is also a warrantor.

Relying on *Nowalski v. Ford Motor Co.*, 335 Ill. App. 3d 625 (2002), the trial court agreed with defendant that plaintiff's claims were time-barred and granted defendant's motion for summary judgment on all three counts. The trial court denied plaintiff's motion for reconsideration, and plaintiff appealed.

The appellate court reversed the trial court's grant of summary judgment on counts I and III, and affirmed the grant of summary judgment on count II. As to the limitations issue, the appellate court followed *Cosman v. Ford Motor Co.*, 285 Ill. App. 3d 250 (1996), rather than *Nowalski*, and held that:

> "plaintiff's right to bring a breach of written warranty action based on the promise to repair accrued when defendant

allegedly failed to successfully repair her car after a reasonable number of attempts and that the four-year statute of limitations did not begin to run until that time." 364 Ill. App. 3d at 146.

The appellate court also held that plaintiff could properly pursue revocation of acceptance as an equitable remedy under the Magnuson-Moss Act if her breach of warranty claim was successful. 364 Ill. App. 3d at 158.

We allowed defendant's petition for leave to appeal. See 210 Ill. 2d R. 315. Because plaintiff does not seek cross-relief as to count II of her complaint, the only counts before this court are counts I and III.

## ANALYSIS

### I

The purpose of a summary judgment proceeding is not to try an issue of fact, but rather to determine whether one exists. *Ferguson v. McKenzie*, 202 Ill. 2d 304, 307-08 (2001). Summary judgment is thus appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2006). Because summary judgment is a drastic measure, it should only be allowed "when the right of the moving party is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). In an appeal from the grant of summary judgment our review proceeds *de novo*. *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). In assessing whether summary judgment was appropriate here, we must determine when the limitations period, applicable to a breach of warranty claim under the Magnuson-Moss Act, commences. On this legal issue our review also proceeds *de novo*. See *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 350 (2002).

### II

As an initial matter we address defendant's argument that the Magnuson-Moss Act does not apply to limited warranties like the one at issue here.

The Magnuson-Moss Act, adopted by Congress in 1975, is a "remedial statute designed to protect consumers from deceptive warranty practices." *Skelton v. General Motors Corp.*, 660 F.2d 311, 313 (7th Cir. 1981). The Act does not require a consumer product to be warranted. See 15 U.S.C. §2302(b)(2) (1994) (prohibiting the Federal Trade Commission (FTC) from requiring "that a consumer product or any of its components be warranted"). Where a warranty is provided, however, the warranty is subject to the Act's regulatory scheme (*Skelton*, 660 F.2d at 314), including rules promulgated by the FTC (15 U.S.C. §2302(a) (1994); 16 C.F.R. §700.1 *et seq.* (2006)).

The Act speaks to both implied warranties and written warranties. An "implied warranty" means "an implied warranty arising under State law," as modified by the Act. 15 U.S.C. §2301(7) (1994). As already noted, plaintiff's implied warranty claim is not before this court.

The Act defines a "written warranty" as:

> "(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking." 15 U.S.C. §2301(6) (1994).

The parties are in agreement that the warranty at issue here constitutes a "written warranty" for purposes of the Act. Case law on this subject is in accord. *E.g.*, *Cosman*, 285 Ill. App. 3d at 253, 259-60 ("A warranty under the Magnuson-Moss Act includes promises to repair products in the future whose inherent reliability is not warranted" and includes six-year/60,000-mile repair or replacement warranty); *Pierce v. Catalina Yachts, Inc.*, 2 P.3d 618, 626-27 (Alaska 2000) (concluding that one-year limited repair warranty "falls within the definition" of a written warranty under section 2301(6)(B) of the Act); *Nationwide Insurance Co. v. General Motors Corp.*, 533 Pa. 423, 433, 625 A.2d 1172, 1177 (1993) (noting that 12-month/12,000-mile

-5-

repair warranty "fit[s] within the modern concept of warranty," citing section 2301(6)(B) of the Act); *see also* C. Reitz, *Manufacturers' Warranties of Consumer Goods*, 75 Wash. U. L.Q. 357, 363 n.21 (1997) ("The Magnuson-Moss Warranty Act's key concept, called a 'written warranty,' is defined primarily as a promise to repair or replace goods," citing section 2301(6)(B) of the Act).

The Magnuson-Moss Act also distinguishes between "full" and "limited" warranties, and sets forth minimum standards for "full" warranties. 15 U.S.C. §2304 (1994). If a written warranty meets the federal minimum standards, "then it shall be conspicuously designated a 'full (statement of duration) warranty.' " 15 U.S.C. §2303(a)(1) (1994). If a warranty does not meet the federal minimum standards, "then it shall be conspicuously designated a 'limited warranty.' " 15 U.S.C. §2303(a)(2) (1994). The parties agree that the warranty at issue here is a "limited" warranty, as opposed to a "full" warranty. We note that defendant's warranty booklet for the 1996 Dodge Neon repeatedly refers to defendant's warranties as "Limited Warranties."

To enforce its provisions, the Magnuson-Moss Act authorizes suits by the Attorney General and the FTC to enjoin "any warrantor from making a deceptive warranty" or to enjoin "any person from failing to comply with any requirement *** or from violating any prohibition" contained in the Act. 15 U.S.C. §2310(c)(1) (1994). Significantly, the Act also "provides a statutory private right of action." *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 386 (2004); accord *Skelton*, 660 F.2d at 315; *Davis v. Southern Energy Homes, Inc.*, 305 F.3d 1268, 1272 (11th Cir. 2002); *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005).

Section 2310(d)(1) states in relevant part:

> "[A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief–
>
> > (A) in any court of competent jurisdiction in any State or the District of Columbia; or
> >
> > (B) in an appropriate district court of the United States ***." 15 U.S.C. §2310(d)(1) (1994).

The term "consumer" is broadly defined under the Act as

> "a buyer (other than for purposes of resale) of any consumer product, any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. §2301(3) (1994).

A "supplier" means "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. §2301(4) (1994). A "warrantor" means "any supplier or other person who gives or offers to give a written warranty or who is or may be obligated under an implied warranty." 15 U.S.C. §2301(5) (1994). No dispute exists that plaintiff is a "consumer" within the meaning of the Act or that defendant is a "warrantor" under the Act.

A consumer who prevails in any action brought under section 2310(d)(1) may be allowed by the court to recover costs and expenses, including attorney fees. 15 U.S.C. §2310(d)(2) (1994). Plaintiff's complaint was filed under section 2310(d)(1) of the Act.

Defendant's argument that the Magnuson-Moss Act does not apply to limited warranties is not entirely clear. As noted above, defendant does not dispute that its warranty constitutes a limited warranty, as defined by the Act. Additionally, defendant does not argue that plaintiff is precluded from bringing a breach of warranty claim under the Act. Indeed, defendant's motion for summary judgment " 'assumes that a cause of action has been stated.' " *Delgatto v. Brandon Associates, Ltd.*, 131 Ill. 2d 183, 190 (1989), quoting *Janes v. First Federal Savings & Loan Ass'n of Berwyn*, 57 Ill. 2d 398, 406 (1974). Moreover, as set forth above, the remedies provision of section 2310 of the Act brings within its reach the failure of a warrantor to comply with any obligation "under a written warranty." 15 U.S.C. §2310(d)(1) (1994). Section 2310 does not distinguish between a full warranty and a limited warranty.

Defendant makes the related argument that the Magnuson-Moss Act is merely a conduit to apply state law remedies. This is the same

argument defendant raised in *Cogley v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 91, 98 (2006), where the appellate court considered the same statute-of-limitations issue that is before us today. The appellate court rejected defendant's argument, stating:

> "According to defendants, in cases arising under limited warranties, the Magnuson-Moss Act serves only as a 'conduit' for claims arising under state law. Even if this statement is true, we fail to see how it has any bearing on the question of when the statute of limitations begins to run. As seen, all of the relevant Illinois decisions are in agreement that the Magnuson-Moss Act borrows the UCC's statute of limitations. This would appear to be true whether state law or federal law governs the substance of the claim. *In other words, for statute of limitations purposes, it should make no difference whether the Magnuson-Moss Act provides the substantive law or merely serves as a conduit for a state law claim.*" (Emphasis added.) *Cogley*, 368 Ill. App. 3d at 98.

We agree with the appellate court. Whether state law will ultimately determine if a breach of limited warranty occurred here is irrelevant to the limitations issue this case presents. Accordingly, we need not consider defendant's "conduit" argument further and, instead, focus on the limitations issue.

### III

Although the Magnuson-Moss Act provides a private right of action for breach of a written warranty, the Act does not contain a limitations provision for such an action. Where a federal statute fails to specify a limitations period for suits under it, "courts apply the most closely analogous statute of limitations under state law." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158, 76 L. Ed. 2d 476, 485, 103 S. Ct. 2281, 2287 (1983); accord *Wilson v. Garcia*, 471 U.S. 261, 268, 85 L. Ed. 2d 254, 261, 105 S. Ct. 1938, 1942 (1985); *Teamsters & Employers Welfare Trust v. Gorman Brothers Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002). In suits brought under the Magnuson-Moss Act, our appellate court, as well as courts in other jurisdictions, generally consider the UCC to be the most closely analogous statute and have borrowed the limitations

provision contained therein. See, *e.g.*, *Nowalski*, 335 Ill. App. 3d at 628 (collecting Illinois cases); *Hillery v. Georgie Boy Manufacturing, Inc.*, 341 F. Supp. 2d 1112, 1114 (D. Ariz. 2004); *Poli v. DaimlerChrysler Corp.*, 349 N.J. Super. 169, 181, 793 A.2d 104, 111 (2002); *Murungi v. Mercedes Benz Credit Corp.*, 192 F. Supp. 2d 71, 79 (W.D.N.Y. 2001); *Keller v. Volkswagen*, 1999 PA Super. 153, ¶5. We agree with the foregoing authorities and will look to the limitations provision contained in the UCC to determine the timeliness of plaintiff's complaint. Specifically, we will look to article 2 of the UCC, which applies to "transactions in goods." 810 ILCS 5/2–102 (West 2006).

Section 2–725 of the UCC, titled "Statute of limitations in contracts for sale," generally provides a four-year limitations period:

> "(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." 810 ILCS 5/2–725 (West 2006).

Preliminarily, we note that the future-performance exception to the four-year limitations period, set forth in subsection (2) above, is not at issue in this case. As will be discussed in greater detail below, a repair or replacement warranty like the one issued by defendant here "has nothing to do with the inherent quality of the goods or their future performance." *Cosman*, 285 Ill. App. 3d at 261. See also C. Reitz, *Manufacturers' Warranties of Consumer Goods*, 75 Wash. U. L.Q. 357, 364 n.24 (1997) ("Promises to repair or replace refer to future performance of sellers, not to future performance of goods"); L. Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* §2–625:129, at 332 (3d ed. 2001) (discussing difference between a warranty of future performance and a covenant to repair or

replace). Accordingly, we turn our attention to the balance of the statute and the parties' arguments relative thereto.

Defendant argues that section 2–725 should be applied as written. Thus, because the statute provides that a "breach of warranty occurs when tender of delivery is made," and tender of delivery of the Dodge Neon was first made in June 1996, plaintiff's suit, filed in May 2001, was untimely. See *Nowalski*, 335 Ill. App. 3d at 632 (holding that cause of action for breach of three-year/36,000-mile limited warranty accrued when the vehicle was delivered and not when defendant failed to successfully repair the vehicle). Plaintiff argues that a repair warranty cannot be breached until the manufacturer fails to repair the vehicle after a reasonable opportunity to do so, and that the appellate court did not err in finding her complaint was timely filed. See *Cosman*, 285 Ill. App. 3d at 260 (holding that breach of six-year/60,000-mile limited powertrain warranty "cannot occur until Ford refuses or fails to repair the powertrain if and when it breaks"); *Belfour v. Schaumberg Auto*, 306 Ill. App. 3d 234, 241 (1999) (following *Cosman* and holding that breach of three-year/50,000-mile repair warranty "cannot occur until Audi refuses or fails to repair the defect"); *Cogley*, 368 Ill. App. 3d at 96-97 (following *Cosman* and holding that suit for breach of three-year/36,000-mile repair warranty filed within four years of repair attempt was timely).[1]

We begin our analysis by turning to the language of article 2 of the UCC. Section 2–725(2) plainly states that "[a] breach of warranty occurs when tender of delivery is made." 810 ILCS 5/2–725(2) (West 2006). The *Nowalski* opinion, on which defendant relies, concluded that once article 2 of the UCC is chosen as the analogous state statute from which to borrow the statute of limitations, the analysis begins and ends with the "tender of delivery" language quoted above. *Nowalski*, 335 Ill. App. 3d at 632. We disagree.

_____

[1]The same divergence of opinion on the limitations issue that is exemplified by *Nowalski* and *Cosman* exists among our sister states. See generally L. Garvin, *Uncertainty and Error in the Law of Sales: The Article Two Statute of Limitations*, 83 B.U.L. Rev. 345, 377-81 (2003) (discussing the split among state courts in their approach to repair or replacement promises).

Although courts generally consider article 2 of the UCC to be the statute most closely analogous to the Magnuson-Moss Act, the two enactments are not identical. For example, article 2 addresses warranties that are created by the "seller." See 810 ILCS 5/2–312, 2–313, 2–314, 2–315 (West 2006). The Magnuson-Moss Act, however, addresses warranties from a "supplier" or "warrantor" who may or may not be the immediate seller. See 15 U.S.C. §§2301(4), (5), (6) (1994). In addition, the term "warranty," as used in the two enactments, is not the same. As discussed above, the Act speaks of implied warranties and written warranties, the latter of which may be either full or limited. 15 U.S.C. §§2301(6), (7), 2303 (1994). In contrast, the UCC speaks of express warranties (which may be oral or written), implied warranties, and warranty of title. 810 ILCS 5/2–312, 2–313, 2–314, 2–315 (West 2006).

Although the parties agree that defendant's warranty is a "written warranty" under the Magnuson-Moss Act, they disagree as to whether the warranty is an "express warranty" under the UCC. Defendant argues that the repair warranty qualifies as an express warranty and that plaintiff's claim is therefore governed by the tender-of-delivery rule in section 2–725(2). Plaintiff argues that it does not qualify as an express warranty and that her claim is not subject to the tender-of-delivery rule.

Section 2–313 of the UCC explains how express warranties are created.

"Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." 810 ILCS 5/2–313(1) (West 2006).

The UCC makes plain that an express warranty is related to the quality or description of the goods. See *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 78 (1982) (observing that UCC warranty rules "determine the quality of the product the manufacturer promises and thereby determine the quality he must deliver"); *Alloway v. General Marine Industries, L.P.*, 149 N.J. 620, 630, 695 A.2d 264, 269 (1997) (stating that "the U.C.C. provides for express warranties regarding the quality of goods"); *Allis-Chalmers Credit Corp. v. Herbolt*, 17 Ohio App. 3d 230, 233, 479 N.E.2d 293, 297 (1984) (identifying UCC express warranties as one of the "warranties of quality"); 1 W. Hawkland, Uniform Commercial Code Series §2–313.4, at 546 (2002) ("express warranties relate exclusively to quality, description and title of the goods and have nothing to do with the other terms of the contract").

In other words, an express warranty, for purposes of the UCC, obligates the seller to deliver goods that conform to the affirmation, promise, description, sample or model. If a seller delivers conforming goods, the warranty is satisfied. If the seller delivers nonconforming goods, the warranty is breached at that time. Even if the buyer is unaware that the goods, as delivered, do not conform to the seller's affirmation, promise, description, sample or model, the warranty has been breached. Under this scenario, the statutory pronouncement that "[a] breach of warranty occurs when tender of delivery is made" (810 ILCS 5/2–725(2) (West 2006)) makes perfect sense, and the four-year limitations period commences at that time. See M. Klinger, *The Concept of Warranty Duration: A Tangled Web*, 89 Dick. L. Rev. 935, 939 (1985) ("Section 2–725(2) presumes that all warranties, expressed or implied, relate only to the condition of the goods at the time of sale" and "[a]s a result, the period of limitations begins to run at that time"); L. Garvin, *Uncertainty and Error in the Law of Sales: The Article Two Statute of Limitations*, 83 B.U.L. Rev. 345, 379 (2003) ("Article Two defines a range of express and implied warranties" which "[a]ll go to the quality of the goods at tender").

The warranty in the present case, however, is not related to the quality or description of the goods at tender. It does not warrant that the vehicle will conform to some affirmation, promise, description, sample or model. Rather, the warranty promises only that the

manufacturer will repair or replace defective parts during the warranty period. As defendant made clear in its brief before this court:

> "DaimlerChrysler's limited warranty was not a promise that the vehicle would be defect free and in the event of a breach of warranty, Plaintiff would be limited to repair or replacement of the vehicle. Rather, DaimlerChrysler's limited warranty promised to cover the cost to repair or replace defective parts in the automobile for the time period covering 36 months or 36 thousand miles."

Although defendant's warranty qualifies as a "written warranty" under the Act, it is not an "express warranty" under the UCC, and is thus not the type of warranty that can be breached on "tender of delivery" (810 ILCS 5/2–725(2) (West 2006)). See *Cogley*, 368 Ill. App. 3d at 96; *Cosman*, 285 Ill. App. 3d at 258-60; C. Dewitt, Note, *Action Accrual Date for Written Warranties to Repair: Date of Delivery or Date of Failure to Repair*, 17 U. Mich. J.L. Reform 713, 722 n.35 (1984) (promise to repair "relates not to the goods and their quality, but to the manufacturer and its obligation to the purchaser," and thus "a repair 'warranty' falls beyond the scope of *** the on-delivery rule"); C. Reitz, *Manufacturers' Warranties of Consumer Goods*, 75 Wash. U. L.Q. 357, 364 n.24 (1997) (tender-of-delivery date for commencement of four-year UCC limitations provision is "completely inappropriate to promises to repair or replace goods that are later determined to be defective"). Accordingly, we reject defendant's argument that the four-year limitations period for breach of the repair warranty commenced upon delivery of the Dodge Neon in 1996, and we overrule the *Nowalski* opinion on which defendant relies.

Our conclusion that the repair warranty is not a UCC express warranty, and thus not subject to the tender-of-delivery rule set forth in the second sentence of section 2–725(2), does not render section 2–725(2) irrelevant for purposes of determining when the limitations period began on plaintiff's claim under the Magnuson-Moss Act. The first sentence of section 2–725(2) remains applicable. The first sentence states: "[a] cause of action accrues *when the breach occurs*, regardless of the aggrieved party's lack of knowledge of the breach." (Emphasis added.) 810 ILCS 5/2–725(2) (West 2006). Although the UCC does not expressly state when the breach of a repair promise occurs, we may refer to the law that exists outside of the UCC. See

810 ILCS 5/1–103 (West 2006) ("Unless displaced by the particular provisions of this Act, the principles of law and equity *** shall supplement its provisions"); L. Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* §2–725:99, at 301 (3d ed. 2001) (because the UCC provides no assistance as to when a nonwarranty breach of contract "occurs" for purposes of computing the limitations period, "it is necessary to resort to the general non-Code law of contracts," which "has not been displaced by the Code and therefore continues in force").

Generally, "[w]hen performance of a duty under a contract is due any non-performance is a breach." Restatement (Second) of Contracts §235, at 211 (1979). Performance under a vehicle manufacturer's promise to repair or replace defective parts is due not at tender of delivery, but only when, and if, a covered defect arises and repairs are required. In that event, if the promised repairs are refused or unsuccessful, the repair warranty is breached and the cause of action accrues, triggering the four-year limitations period. See *Cosman*, 285 Ill. App. 3d at 260 (holding that breach of six-year/60,000-mile limited powertrain warranty "cannot occur until Ford refuses or fails to repair the powertrain if and when it breaks"); *Belfour*, 306 Ill. App. 3d at 241 (holding that breach of three-year/50,000-mile repair warranty "cannot occur until Audi refuses or fails to repair the defect"); *Cogley*, 368 Ill. App. 3d at 96-97 (holding that suit for breach of three-year/36,000-mile repair warranty filed within four years of repair attempt was timely). See also *Monticello v. Winnebago Industries, Inc.*, 369 F. Supp. 2d 1350, 1356-57 (N.D. Ga. 2005) (under Georgia law, a written warranty that provides for repair or replacement of parts is breached when the purchaser returns the product to the dealer for repair and repair is refused or unsuccessful); *Poli*, 349 N.J. Super. at 180, 793 A.2d at 110-11 (under New Jersey law, cause of action for breach of seven-year/70,000-mile powertrain warranty would not have accrued when the car was delivered, but rather when persistent problems appeared or when DaimlerChrysler was unable to repair the defect); *Long Island Lighting Co. v. IMO Industries Inc.*, 6 F.3d 876, 889-90 (2d Cir. 1993) (under New York law, cause of action for breach of a repair promise accrued when the generator malfunctioned and the seller refused to make the necessary repairs).

This is the approach advocated by some commentators. For example, in his discussion of the appropriate treatment of a manufacturer's express warranty to repair or replace defective parts, Professor Lawrence states:

> "The sounder approach is to recognize that the failure to repair or replace is merely a breach of contract and not a breach of warranty, and therefore no cause of action arises until the seller has refused to repair or replace the goods. This is because until the seller has failed or refused to make the repairs or provide a replacement, the buyer, not being entitled to such a remedy, has no right to commence an action for damages. As a result, the action is timely if brought within four years of the seller's failure or refusal." L. Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* §2–725:101, at 303 (3d ed. 2001).

Accord L. Garvin, *Uncertainty and Error in the Law of Sales: The Article Two Statute of Limitations*, 83 B.U.L. Rev. 345, 381 (2003).

The correctness of this approach is manifest when we consider consumer claims for breach of repair warranties that run for periods longer than the three years/36,000 miles at issue here. For example, consider the case of a consumer who purchases a vehicle carrying a five-year/50,000 mile repair warranty. If the four-year limitations period commences at "tender of delivery," the limitations period for a breach of the repair promise occurring in year five will expire before the breach even occurs, thus rendering the repair warranty unenforceable during its final year. Statutes of limitations, however, are intended "to prevent stale claims, not to preclude claims before they are ripe for adjudication." *Guzman v. C.R. Epperson Construction, Inc.*, 196 Ill. 2d 391, 400 (2001). Even a four-year warranty could be rendered unenforceable if breach of the repair promise occurred near the end of the warranty period. In that case, the buyer would have only the briefest of periods in which to file suit. See *Nationwide Insurance Co.*, 533 Pa. at 434, 625 A.2d at 1178.

Defendant argues that concerns about the enforceability of longer-term repair warranties are inapplicable to the facts of this case and without merit. We disagree. Although the repair warranty at issue here ran for three years, our holding in this case will apply equally to longer-term warranties. Such warranties are common in the automobile industry. Adoption of defendant's position would be an

invitation to manufacturers and sellers of automobiles, as well as other goods, to engage in misleading marketing. That is, a manufacturer or seller could use the marketing advantage of a longer repair warranty, yet escape the accompanying obligations of that warranty by pleading the statute of limitations in defense. C. Williams, *The Statute of Limitations, Prospective Warranties, and Problems of Interpretation in Article Two of the UCC*, 52 Geo. Wash. L. Rev. 67, 105 (1983). Such a result is contrary to the very purpose of the Magnuson-Moss Act: "to improve the adequacy of information available to consumers" and "prevent deception." 15 U.S.C. §2302(a) (1994).

Defendant also argues that unless the tender-of-delivery rule in section 2–725 is given effect, the limitations period for breach of limited warranty actions will be "limitless" and "uncertain." This argument is without merit. Because the promise to repair or replace defective parts is only good during the warranty period, the latest a breach of warranty can occur is at the very end of that period. Accordingly, the statute of limitations will expire, at the latest, four years after the warranty period has run. If breach of a repair warranty occurs earlier in the warranty period, the limitations period for that breach will expire sooner, but in no event will the warrantor's exposure extend beyond the warranty period, plus four years. Thus, contrary to defendant's argument, commencing the four-year limitations period from the date the warrantor fails or refuses to repair the vehicle does not result in a limitless limitations period.

We recognize, of course, that a fact question may arise as to the date on which a repair warranty was breached which, in turn, would create some uncertainty as to when the four-year limitations period should commence. Fact questions of this nature, however, frequently arise in cases where the statute of limitations has been pled in defense. Resolution of this type of uncertainty is a classic function of the trier of fact. See, *e.g.*, *County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 153-54 (1985) (remanding the matter to the circuit court for a factual determination as to when the statute of limitations began to run against the county on its claims for defective design and construction of the county's administration building); *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 417 (1981) (holding that trier of fact must determine when the plaintiff had sufficient information as to the roof defect to start the running of the limitations period); *Witherell v. Weimer*, 85 Ill. 2d 146, 156 (1981)

("In many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact"). We therefore reject defendant's argument that commencing the limitations period when the warrantor fails or refuses to repair the defect–rather than at tender of delivery–will create unacceptable uncertainty in the limitations period.

Turning to the facts of this case, the record indicates that plaintiff brought her vehicle to McGrath and another authorized dealer on several occasions beginning in July 1998. At that point, assuming the alleged defects were covered defects, defendant was obligated (through its authorized dealer) to make good on its repair promise. Plaintiff's lawsuit, filed in May 2001, is therefore timely. Accordingly, we affirm that portion of the judgment of the appellate court which reversed the grant of summary judgment in favor of defendant as to count I of the complaint.

IV

Defendant next argues that plaintiff cannot seek revocation of acceptance (count III of the complaint) if the underlying breach of warranty claim is time-barred. Because we have already held that plaintiff's breach of warranty claim was timely filed, we necessarily reject defendant's argument. Defendant further argues, however, that plaintiff is not entitled to revocation of acceptance because no privity of contract exists between the parties, and the relief sought by revocation–the unwinding of the sales contract–is nonsensical against a manufacturer who is not a party to the sales transaction. Plaintiff responds that revocation is an equitable form of relief available under section 2310(d) of the Magnuson-Moss Act and that the existence of a manufacturer's written warranty creates sufficient privity to seek revocation against the manufacturer.

Section 2310(d) of the Act states that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under *** a written warranty *** may bring suit for damages and other legal and *equitable* relief." (Emphasis added.) 15 U.S.C. §2310(d)(1) (1994). Revocation of acceptance is a form of equitable relief. See *Mrugala v. Fairfield Ford, Inc.*, 325 Ill. App. 3d 484, 492 (2001). Whether this form of relief should be

available against a nonselling manufacturer is an issue on which Illinois state courts have not spoken. Courts in our sister states are divided. Compare, *e.g.*, *Hardy v. Winnebago Industries, Inc.*, 120 Md. App. 261, 270-71, 706 A.2d 1086, 1091 (1998), and *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 125, 374 A.2d 144, 150 (1976) (where the Maryland and Connecticut courts held that the remedy of revocation is only available against a seller of goods), with *Ventura v. Ford Motor Corp.* 180 N.J. Super. 45, 65-66, 433 A.2d 801, 812 (1981), and *Volkswagen of America, Inc. v. Novak*, 418 So. 2d 801, 804 (Miss. 1982) (where the New Jersey and Mississippi courts allowed revocation of acceptance against the remote manufacturer).

We note that federal courts sitting in Illinois that have considered this issue have also reached contrary results. Compare *Larry J. Soldinger Associates, Ltd. v. Aston Martin Lagonda of North America, Inc.*, No. 97 C 7792 (N.D. Ill. September 13, 1999) (holding that the plaintiff could pursue revocation against the defendant manufacturer based on breach of the written warranty), with *Kutzler v. Thor Industries, Inc.*, No. 03 C 2389 (N.D. Ill. July 14, 2003) (rejecting *Soldinger* and holding that revocation of acceptance is unavailable against a manufacturer who is not a party to the sales contract). The appellate court in the present case followed the *Soldinger* line of cases. 364 Ill. App. 3d at 158. After carefully considering the matter, we find *Kutzler* to be more persuasive, and thus reverse the appellate court's judgment as to count III of the complaint.

In *Kutzler*, the plaintiff asserted a claim for revocation of acceptance under section 2310(d) of the Magnuson-Moss Act based on an alleged breach of a written limited warranty by Thor Industries, the manufacturer of a motor home which the plaintiff had purchased from Bernard Chevrolet. In holding that the plaintiff could not seek revocation of acceptance against the non-selling manufacturer, the *Kutzler* court first consulted Illinois law, turning to section 2–608 of the UCC. Section 2–608, which has not been amended since *Kutzler* was decided, provides as follows:

> "Revocation of Acceptance in Whole or in Part. (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

-18-

(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." 820 ILCS 5/2–608 (West 2006).

The *Kutzler* court observed that "[t]he language of Section 2–608 on its face contemplates that the remedy of revocation would be available against the seller, and not against a non-seller who manufactured the goods." The *Kutzler* court also noted, however, that no Illinois state court had yet ruled on whether the remedy of revocation should be so limited, and that courts in other jurisdictions were not in agreement. Ultimately, *Kutzler* found instructive the analysis in *Gasque v. Mooers Motor Car Co., Inc.*, 227 Va. 154, 162, 313 S.E.2d 384, 390 (1984), where the Virginia Supreme Court explained:

"The remedy of revocation of acceptance *** lies only against a seller of goods, not against a remote manufacturer. This is so because the remedy, where successful, cancels a contract of sale, restores both title to and possession of the goods to the seller, restores the purchase price to the buyer, and as fairly as possible, returns the contracting parties to the *status quo ante*. The remote manufacturer, having no part in the sale transaction, has no role to play in such a restoration of former positions."

The Virginia Supreme Court thus held that the remedy of revocation of acceptance "is conceptually inapplicable to any persons other than

the parties to the contract sought to be rescinded." *Gasque*, 227 Va. at 163, 313 S.E.2d at 390.

*Kutzler* concluded that the *Gasque* opinion comports with the language of section 2–608 of the UCC and with the underlying purpose of the remedy of revocation. Thus, the court dismissed the plaintiff's revocation claim against the non-selling manufacturer. See also *Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1070 (N.D. Ill. 2004) (following *Kutzler* and holding that the plaintiff could not pursue revocation of acceptance against the manufacturer).

The *Kutzler* opinion expressly declined to follow *Soldinger*. In *Soldinger*, the plaintiff sued the vehicle manufacturer, Aston Martin Lagonda of North America, for breach of warranty and revocation of acceptance under both the Magnuson-Moss Act and the UCC. The defendant manufacturer argued that revocation of acceptance, based on breach of the implied warranty of merchantability, must fail for the same reason the implied warranty claim failed: a lack of privity. The federal court rejected the defendant's argument, stating:

> "Section 2310(d)(1) provides that 'a consumer who is damaged by the failure of a supplier ... to comply with any obligation ... under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.' In other words, Plaintiff's request for revocation of acceptance may be based on Aston Martin's failure to comply with either a written warranty or an implied warranty. Clearly, the latter alternative is not available, as the court is dismissing Count II [the implied warranty count]. But nothing in Count III [the revocation count] suggests that it requests relief solely on the basis of the breach of implied warranty claim, or that it is otherwise limited to Count II. *** Defendant's argument that Count III must be dismissed for lack of contractual privity is unavailing." *Soldinger*, No. 97 C 7792.

*Soldinger* also considered whether revocation of acceptance against the defendant manufacturer was available under section 2–608 of the UCC. Relying on *Lytle v. Roto Lincoln Mercury & Subaru, Inc.*, 167 Ill. App. 3d 508 (1988), and *Blankenship v. Northtown Ford, Inc.*, 95 Ill. App. 3d 303 (1981), the federal court ruled that revocation of acceptance was available against the defendant

manufacturer even where the plaintiff had no viable UCC breach of warranty claims.

We, like the *Kutzler* court, are not persuaded by *Soldinger* that revocation of acceptance should lie against a nonselling manufacturer. The *Soldinger* opinion did not consider the nature of the remedy or the divergence of opinion on this issue, and its rejection of the defendant's privity argument is not entirely clear. Moreover, as *Kutzler* observed, the two Illinois state cases to which *Soldinger* cites–*Lytle* and *Blankenship*–did not involve revocation claims against a nonselling manufacturer. Rather, they involved revocation claims against the direct sellers.

Nonetheless, *Soldinger* has been cited with approval by other federal district courts in Illinois. See *Jones v. Fleetwood Motor Homes*, No. 98 C 3061 (N.D. Ill. October 29, 1999); *Schimmer v. Jaguar Cars, Inc.*, No. 03 C 1884 (N.D. Ill. July 2, 2003), *vacated on other grounds*, 384 F.3d 402 (7th Cir. 2004); *Hamdan v. Land Rover North America, Inc.*, No. 03 C 2051 (N.D. Ill. August 8, 2003). We remain unpersuaded, however, that simply because the Act allows an action for equitable relief, revocation must be available for all breaches of warranty, irrespective of the status of the defendant or the relationship between the parties. Rather, we agree with *Kutzler* and *Gasque* that revocation of acceptance is "conceptually inapplicable" to a nonseller. As one commentator observed: "Manufacturers do not tender goods to consumers; consumers do not accept (or reject) goods tendered by manufacturers. Vis-a-vis manufacturers there is no acceptance to revoke." C. Reitz, *Manufacturers' Warranties of Consumer Goods*, 75 Wash. U. L.Q. 357, 362 n.17 (1997).

Citing *Szajna v. General Motors Corp.*, 115 Ill. 2d 294 (1986), and *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 295 (1988), plaintiff argues that, by virtue of defendant's written warranty, privity is established and revocation should be permitted. Under *Szajna* and *Rothe*, a manufacturer's extension of a Magnuson-Moss written warranty to the consumer establishes privity which, although limited in nature, is sufficient to support a claim for breach of an implied warranty under section 2310(d) of the Act. *Szajna*, 115 Ill. 2d at 315-16; *Rothe*, 119 Ill. 2d at 294-95.[2]` The limited privity we recognized

_____

[2]Tangentially, we note that federal courts are not in agreement with *Szajna*'s interpretation of the Magnuson-Moss Act's implied warranty

in *Szajna* does not change the nature of the remedy plaintiff seeks. Revocation of acceptance contemplates a buyer-seller relationship that is absent here. We are not inclined to extend our holding in *Szajna* to permit revocation against DaimlerChrysler where plaintiff purchased the subject vehicle–a used Dodge Neon–from a Buick-Nissan dealership.

We recognize that under the New Vehicle Buyer Protection Act (815 ILCS 380/1 *et seq.* (West 2006)), a manufacturer may be required to accept return of a new vehicle and make a full refund to the consumer where, after a reasonable number of attempts, the seller is unable to conform the new vehicle to any of its applicable express warranties. 815 ILCS 380/3 (West 2006). The fact that our state legislature has provided this type of remedy to new-vehicle buyers does not persuade us that this type of relief is necessarily available to used-car buyers seeking relief under the Magnuson-Moss Act.

Our holding does not leave plaintiff without a remedy for defendant's alleged breach of its repair warranty. Plaintiff may still seek money damages, as well as attorney fees, should she prevail in the trial court on her breach of written warranty claim.

## CONCLUSION

For the reasons discussed above, we affirm the judgment of the appellate court reversing the trial court's grant of summary judgment in favor of defendant as to count I of the complaint, and reverse the judgment of the appellate court reversing the trial court's grant of summary judgment in favor of defendant as to count III of the complaint. We remand this matter to the trial court for further proceedings.

> *Affirmed in part and reversed in part;*
> *cause remanded.*

---

provisions. See *Smith*, 334 F. Supp. 2d at 1068-69; *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 833 (2004).