

FILED

Sep 28 2018, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

David T. Schaefer
Anthony M. Zelli
Dinsmore & Shohl LLP
Louisville, Kentucky

ATTORNEYS FOR APPELLEES

Scott A. Benkie
Benkie & Crawford
Indianapolis, Indiana

Rodney V. Taylor
Hilary A. Barnes
Christopher & Taylor
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenworth of Indianapolis, Inc.,
Kenworth of Indianapolis, Inc.
d/b/a ITC Acceptance
Company, and Paccar Inc.,

*Appellants-Defendants,*

v.

Seventy-Seven Limited, Convey
All, LLC, Keller Trucking, Inc.,
K&K Aggregate, Inc., Huber
Transport, LLC, Triple H
Trucking, LLC, and Custom
Hauling, Inc.,

*Appellees-Plaintiffs*

September 28, 2018

Court of Appeals Case No.
49A02-1710-PL-2502

Interlocutory Appeal from the
Marion Superior Court

The Honorable Cynthia J. Ayers,
Judge

Trial Court Cause No.
49D04-1010-PL-43362

**Crone, Judge.**

# Case Summary

Kenworth of Indianapolis, Inc., et al. (collectively "the Defendants"),[1] manufactured and sold to Seventy-Seven Limited, et al. (collectively "the Plaintiffs"),[2] a fleet of dump trucks that vibrated excessively while idling or at specific RPMs. The Defendants were unable to correct the problem within the one-year/100,000-mile basic vehicle warranty period specified in the parties' warranty agreement, and they extended the warranty period to four years/250,000 miles. More than four years after the trucks were delivered, the Plaintiffs filed a complaint against the Defendants asserting claims for breach of warranty and breach of contract. The Defendants filed a motion for summary judgment asserting that the Plaintiffs' causes of action accrued when the trucks were delivered and thus were barred by the warranty agreement's one-year time limit for commencing legal action. The trial court denied the Defendants' motion. In this interlocutory appeal, the Defendants argue that the trial court erred. We disagree and therefore affirm.

---

[1] Defendant Paccar Inc. is the parent company of Kenworth Truck Company and manufactures/assembles trucks under the latter name. Paccar sold its trucks through its dealer, Kenworth of Indianapolis, Inc., a separate and independent legal entity. ITC Acceptance Company is the dealer's financing company.

[2] The Plaintiffs (Seventy-Seven Limited, Convey All, LLC, Keller Trucking, Inc., K&K Aggregate, Inc., Huber Transport, LLC, Triple H Trucking, LLC, and Custom Hauling) were among a group of thirteen trucking companies that together ordered forty-nine identically configured Kenworth trucks from Kenworth of Indianapolis. These companies had independently been buying Kenworth trucks for years, but decided to coordinate truck orders to obtain discount pricing.

# Facts and Procedural History[3]

Paccar Inc. manufactured a fleet of dump trucks that Kenworth of Indianapolis, Inc. ("the Dealership"), sold to the Plaintiffs, who took delivery of the trucks from November 2005 through January 2006. For each truck, the respective buyer signed a warranty agreement that reads in pertinent part as follows:

> This is a legal contract between you, Kenworth Truck Company and the selling Kenworth dealer.
>
> Kenworth Truck Company warrants directly to you that the Kenworth vehicle identified below, except for [certain parts and part assemblies warranted by their respective manufacturers, including engines and automatic transmissions], and except for trade accessories, will be free from defects in materials and workmanship during the time and mileage periods set forth in the Warranty Schedule and appearing under normal use and service. This warranty extends only to you, the First Purchaser and applies only to those items which were installed by the Kenworth plant at the time of manufacture as listed.
>
> Your sole and exclusive remedy against Kenworth Truck Company and the selling Kenworth Dealer, arising from your purchase and use of this vehicle, is limited to the repair or replacement of defective materials or workmanship at US and Canadian Authorized Kenworth Class 8 Dealers to the extent of Kenworth Truck Company's obligations under the Warranty Schedule on the reverse side of this Agreement. ….
>
> *WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY*

---

[3] We held oral argument on June 28, 2018, at the Krannert School for Executive Management at Purdue University. We thank the students, faculty, and staff for their hospitality, and we thank counsel for their advocacy.

> Except for the above warranty, Kenworth Truck Company and the selling Kenworth Dealer make no other warranties, express or implied, and make NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.
>
> It is agreed that Kenworth Truck Company and the selling Kenworth Dealer shall not be liable for incidental or consequential damages including, but not limited to:  loss of income, damage to vehicle, attachments, trailers and cargo; towing expenses; attorney's fees and any liability you may have in respect to any other people.
>
> *TIME LIMIT ON COMMENCING LEGAL ACTION*
>
> It is agreed that you have **one** year from the accrual of the cause of action to commence any legal action arising from the purchase or use of the vehicle, or be barred forever.

Appellants' App. Vol. 3 at 13 (underlined emphasis replaced by bold emphasis). Pursuant to the warranty schedule, the Defendants agreed to "provide 100% parts & labor for defective material or workmanship" related to the basic vehicle (with certain exceptions) for twelve months or 100,000 miles, "whichever shall occur first." *Id*. at 14.

[3]     Each buyer also signed a buyer's order form with a disclaimer of warranties provision that states,

> The seller [i.e., the Dealership] hereby expressly disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose unless otherwise stated in this document.  Seller neither assumes

nor authorizes any other person to assume for it any liability in connection with the sale of the item/items.

*Id.* at 148 (capitalization altered). The form indicates that the truck was sold "with manufacturer[']s standard new truck warranty" and that the purchaser "hereby acknowledges the purchase of this truck as is, with all faults knowingly accepted and without any warranties express or implied, other than as indicated above …." *Id.* (capitalization altered).

[4] "Immediately after delivery of the first set of trucks, several of the buyers complained to [the Dealership] that the trucks vibrated excessively while idling" or at specific RPMs. *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 49A02-1504-PL-249, slip op. at *1 (Ind. Ct. App. Mar. 24, 2016) ("*Kenworth 1*"), *trans. denied*. The Dealership "contacted Paccar, who then consulted with the manufacturers of the engine, transmission, and engine mounts, to resolve the vibration problem." *Id.* "In September 2006 the decision was made to install modified engine mounts. The new mounts initially reduced the vibration to acceptable levels, but the problem reoccurred in 2007." *Id.* In March 2008, Paccar agreed to extend the "basic vehicle warranty" to four years/250,000 miles. Appellees' App. Vol. 3 at 64; Appellants' App. Vol. 3 at 11. This warranty extension is documented in Paccar interoffice emails, which contain no further details regarding the extension.

[5] Also in 2008, "the Defendants installed a different engine mount that they believed would be more durable. Again, the vibration was initially reduced to acceptable levels." *Kenworth 1*, slip op. at *1. By November 2008, however, the

vibration problem was reoccurring in several of the trucks. At that point, Paccar agreed to provide free engine mount replacements for as long as the Plaintiffs owned the trucks. Around this time, one of the Plaintiffs, Seventy-Seven Limited, returned eight of the trucks to the Dealership and stopped making payments on them.

[6] In September 2010, the Dealership, through its financing company, ITC Acceptance Company, filed a replevin action against two of the Plaintiffs based on their default on loans obtained to purchase the trucks. On October 4, 2010, the Plaintiffs filed this action against the Defendants, asserting claims for breach of express and implied warranties, breach of contract, constructive fraud, and rescission.[4] In March 2011, the Plaintiffs amended their complaint to add a claim of estoppel and a claim of nonconforming goods under the Uniform Commercial Code ("UCC"). An additional amended complaint was filed in 2013.[5] In their answers to the complaints, the Defendants asserted as an affirmative defense that the Plaintiffs' claims were time-barred.

[7] The Defendants filed a motion for summary judgment arguing that the Plaintiffs' claims were barred by the warranty agreement's one-year time limit for commencing legal action and by Indiana Code Section 26-1-2-725 ("Section

---

[4] Pursuant to an agreement between the parties, the replevin action was consolidated with this action and is now deemed a counterclaim.

[5] Only the original complaint and the March 2011 amended complaint (entitled "Second Amended Complaint") appear in the record before us.

2-725"), which is part of Indiana's codification of the UCC. Section 2-725 is entitled "Statute of limitations in contracts for sale" and reads in relevant part as follows:

> (1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year, but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.
>
> ....
>
> (4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before IC 26-1 becomes effective.

The Defendants argued that the Plaintiffs' causes of action accrued at tender of delivery and that their complaint was filed long after the one-year limitation period expired.

[8] The Plaintiffs asked the trial court to deny the summary judgment motion, asserting that the Defendants had waived their timeliness argument by failing to raise it in response to a purported cross-motion for summary judgment. The trial court agreed with the Plaintiffs. On appeal, another panel of this Court

determined that the Defendants had not waived their timeliness argument and reversed and remanded for further proceedings. *Kenworth 1*, slip op. at \*10.

[9] On remand, the Defendants filed a renewed motion for summary judgment asserting that the Plaintiffs' complaint was untimely filed. In September 2017, after a hearing, the trial court issued an order denying the motion.[6] This interlocutory appeal ensued.

## Discussion & Decision

[10] The Defendants argue that the trial court erred in denying their summary judgment motion. "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which can be determined as a matter of law." *Lamb v. Mid Indiana Serv. Co.*, 19 N.E.3d 792, 793 (Ind. Ct. App. 2014). "The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Mint Mgmt., LLC v. City of Richmond*, 69 N.E.3d 561, 564 (Ind. Ct. App. 2017). If the moving party meets its burden, "the burden then shifts to the nonmoving party whose response must set forth specific facts indicating that there is an issue of material fact." *Venture Enter., Inc. v. Ardsley Distrib., Inc.*, 669 N.E.2d 1029, 1032 (Ind. Ct. App. 1996). "The nonmovant may not rest upon bare allegations

---

[6] The Plaintiffs included a copy of the hearing transcript in their appendix in contravention of Indiana Appellate Rule 50(F), which states, "Because the Transcript is transmitted to the Court on Appeal pursuant to Rule 12(B), parties should not reproduce any portion of the Transcript in the Appendix."

made in the pleadings, but must respond with affidavits or other evidence setting forth specific facts showing there is a genuine issue in dispute." *Id.* Any doubts as to any facts or inferences to be drawn from those facts must be resolved in favor of the nonmoving party. *Mint Mgmt.*, 69 N.E.3d at 564.

[11] "We review a summary judgment ruling de novo." *Pelliccia v. Anthem Ins. Cos.*, 90 N.E.3d 1226, 1230 (Ind. Ct. App. 2018). A trial court's findings and conclusions offer insight into the rationale for the court's judgment and facilitate appellate review but are not binding on this Court. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014), *trans. denied* (2015). We are not constrained to the claims and arguments presented to the trial court, and we may affirm a summary judgment ruling on any theory supported by the designated evidence. *Manley v. Sherer*, 992 N.E.2d 670, 673 (Ind. 2013). The party that lost in the trial court has the burden of persuading us that the trial court erred. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind. Ct. App. 1999).

[12] The overarching question in this appeal is whether the Defendants have established as a matter of law that the Plaintiffs' complaint was untimely filed. To answer this question, we must determine whether the Defendants have established that there are no genuine issues of material fact regarding when the

Plaintiffs' causes of action accrued.[7]  "The determination of when a cause of action accrues is generally a question of law." *Imbody v. Fifth Third Bank*, 12 N.E.3d 943, 945 (Ind. Ct. App. 2014).  But when there is a factual issue concerning the date on which a cause of action accrues, the question is generally one for the finder of fact.  *Monsanto Co. v. Miller*, 455 N.E.2d 392, 395 (Ind. Ct. App. 1983).  Citing *Ludwig v. Ford Motor Co.*, 510 N.E.2d 691 (Ind. Ct. App. 1987), *trans. denied* (1988), and Section 2-725, the Defendants argue that the Plaintiffs' causes of action accrued at tender of delivery as a matter of law.

[13]  In *Ludwig*, the plaintiff purchased five Ford trucks with General Motors ("GM") engines that were delivered in May 1979.  The truck bodies were subject to a limited manufacturer's warranty for which "repair or replacement of parts [was] the only remedy." *Ludwig*, 510 N.E.2d at 694.  The engines were subject to a separate limited warranty pursuant to which GM promised to repair "any defective or malfunctioning parts" up to twenty-four months or 200,000 miles. *Id*.  Immediately after delivery, the trucks experienced repeated mechanical breakdowns, and eventually all five engines blew up, rendering the trucks inoperable.  When the engines began failing, Ludwig was assured that the situation would be resolved.  Two of the engines were repaired, but only

---

[7] We respectfully disagree with portions of the trial court's analysis, which apparently was adopted from a proposed order submitted by the Plaintiffs.  Rather than respond to the Defendants' arguments challenging that analysis, we elect to start from scratch for clarity's sake.

temporarily. Further repairs to the five trucks were not made because the manufacturers claimed that the warranties had expired.

[14] In August 1983, more than four years after the trucks were delivered, Ludwig sued Ford and GM, asserting breach of express and implied warranties and other claims. Ford and GM asserted that Ludwig's breach of warranty claims were barred by Section 2-725's four-year limitation period, and the trial court granted summary judgment in their favor. In response to Ludwig's argument on appeal that the trial court erred, another panel of this Court simply quoted Section 2-725(1) and -(2) and stated, "Thus, an action for breach of warranty must be commenced within four years after tender of delivery." *Id*. at 696. In other words, Ludwig's breach of warranty claims accrued when tender of delivery was made, and those claims were "barred by the statute of limitations" because he "did not file his complaint within the required four year period …." *Id*.

[15] The Defendants contend that "*Ludwig* is binding, on point, and should be followed." Appellants' Br. at 24. We disagree, for two reasons. First, this Court does not recognize horizontal stare decisis; "each panel of this Court has coequal authority on an issue[,]" and although we are respectful of other panels' decisions, we are not bound by them. *In re F.S.*, 53 N.E.3d 582, 596 (Ind. Ct. App. 2016) (quoting *In re C.F.*, 911 N.E.2d 657, 658 (Ind. Ct. App. 2009)). "In short, we write upon a clean slate." *Id*.

[16] Second, and more important, we conclude that the *Ludwig* panel erred in treating the manufacturers' promise to repair defective parts as a warranty under the UCC and therefore erred in determining when Ludwig's claims accrued under Section 2-725. Our conclusion is based on the persuasive analysis of the Supreme Court of Illinois in *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047 (Ill. 2007), which involved a similar promise to repair, as well as our reading of the parties' warranty agreement and the relevant UCC statutes. Issues of contract interpretation and statutory construction are pure questions of law, which we review de novo. *Estate of Ecker v. Estate of Samson*, 59 N.E.3d 282, 284 (Ind. Ct. App. 2016). We "must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Layne v. Layne*, 77 N.E.3d 1254, 1265 (Ind. Ct. App. 2017), *trans. denied*. "If contract language is unambiguous, [we] may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument." *Id*. "[T]he primary goal in interpreting a statute is to fulfill the legislature's intent and, if that language is clear and unambiguous, we simply apply its plain and ordinary meaning, heeding both what it says and what it does not say." *In re Adoption of D.M.*, 82 N.E.3d 354, 360 (Ind. Ct. App. 2017). "We presume the legislature intended logical application of the language used in the statute so as to avoid unjust or absurd results." *Id*. "[S]tatutes concerning the same subject matter must be read together in an attempt to harmonize and give effect to each."

*Peoples State Bank v. Benton Twp. of Monroe Cty.*, 28 N.E.3d 317, 323 (Ind. Ct. App. 2015).

[17] A detailed review of the *Mydlach* decision provides a well-reasoned perspective on promises to repair and their interplay with Section 2-725 and other relevant provisions of the UCC. In June 1998, Mydlach purchased a 1996 DaimlerChrysler Dodge Neon with approximately one year and 10,000 miles remaining on a three-year/36,000-mile warranty that covered "the cost of all parts and labor needed to repair any item on [her] vehicle [with certain exceptions] that's defective in material, workmanship, or factory preparation." *Mydlach*, 875 N.E.2d at 1051. Beginning in July 1998, Mydlach brought the car to two dealerships "several times for a variety of problems, including a recurring fluid leak." *Id*. She "claimed that the dealerships' repair attempts were unsuccessful and, as a result, she could not use the vehicle as intended." *Id*.

[18] In May 2001, Mydlach sued DaimlerChrysler in state court under the federal Magnuson-Moss Warranty Act ("the Act") for breach of written warranty, breach of the implied warranty of merchantability, and revocation of acceptance. DaimlerChrysler argued that Mydlach's breach of warranty claims were time-barred because they were subject to Illinois' Section 2-725's four-year limitation period, which purportedly "commenced upon 'tender of delivery' of

the vehicle to its original purchaser in June 1996" pursuant to Section 2-725(2).[8] *Id.* at 1052. The trial court agreed and entered summary judgment for DaimlerChrylser on all three counts. The appellate court reversed as to the first and third counts, and DaimlerChrylser appealed that ruling to the supreme court.

[19] Because the Act does not contain a limitations provision for a breach of warranty action, the court sought to apply the "most closely analogous statute of limitations under state law." *Id.* at 1055 (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983)). The court looked to Article 2 of the UCC, which applies to "transactions in goods[,]" to "determine the timeliness" of Mydlach's complaint. *Id.* at 1056.[9] The court quoted Section 2-725(1) and -(2) and noted that Section 2-725(2)'s "future-performance exception" was not at issue because a repair or replacement provision

> "has nothing to do [with the future performance of the goods].
> *Cosman* [*v. Ford Motor Co.*, 674 N.E.2d 61, 68 (Ill. App Ct. 1996),
> *appeal denied* (1997))[10]]. See also C. Reitz, *Manufacturers'
> Warranties of Consumer Goods*, 75 Wash. U. L.Q. 357, 364 n.24
> (1997) ("Promises to repair or replace refer to future performance
> of sellers, not to future performance of goods"); L. Lawrence,
> *Lawrence's Anderson on the Uniform Commercial Code* § 2-625:129, at

---

[8] Illinois' Section 2-725 is practically identical to Indiana's, so we refer to them interchangeably.

[9] In Indiana, Article 2 of the UCC is codified in Indiana Code Chapter 26-1-2.

[10] The *Cosman* court also stated that a repair or replacement provision "has nothing to do with the inherent quality of the goods" for purposes of Section 2-313 of the UCC, which is addressed more fully below. 674 N.E.2d at 68.

332 (3d ed. 2001) (discussing difference between a warranty of future performance and a covenant to repair or replace).[11]

*Id.* at 1056.

[20] The court then turned its "attention to the balance of [Section 2-725] and the parties' arguments relative thereto." *Id.* The court acknowledged that "[a]lthough courts generally consider article 2 of the UCC to be the statute most closely analogous to [the Act], the two enactments are not identical." *Id.* at 1057. For example, the "the Act speaks of implied warranties and written warranties, the latter of which may be either full or limited. In contrast, the UCC speaks of express warranties (which may be oral or written), implied warranties, and warranty of title." *Id.* (citations omitted). The parties agreed that DaimlerChrysler's repair warranty was a "written warranty" under the Act but disagreed regarding whether it was an "express warranty" under the UCC; DaimlerChrysler argued that "the repair warranty [qualified] as an express

---

[11] *See also Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 323-24 (1st Cir. 2008) ("This type of repair promise warrants the future performance of the warrantor, not the goods. The warrantor has not guaranteed that the goods will not malfunction in the future, but rather that the warrantor will remedy any problems that arise in a particular way for a limited period of time.") (citation omitted), *cert. denied*; *Ontario Hydro v. Zallea Syst., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983) ("[A] repair or replacement warranty does not warrant how the goods will perform in the future. Rather, such a warranty simply provides that if a product fails or becomes defective, the seller will replace or repair within a stated period."); *Flagg Energy Dev. Corp. v. Gen'l Motors Corp.*, 709 A.2d 1075, 1086 (Conn. 1998) ("[A] promise to repair or replace, unless it contains express language to the contrary, is not a promise of future performance with response to [Section 725(2)].") , *overruled on other grounds by Ulbrich v. Groth*, 78 A.3d 76 (Conn. 2013); *Nebraska Popcorn, Inc. v. Wing*, 602 N.W.2d 18, 24 (Neb. 1999) ("A warranty to repair or replace does not guarantee future performance. Rather, it anticipates potential defects and specifies the buyer's remedy during the stated period."); *contra Krieger v. Nick Alexander Imports, Inc.*, 285 Cal. Rptr. 717, 724 (Cal. Ct. App. 1991) ("A promise to repair defects that occur during a future period is the very definition of express warranty of future performance …."). We agree with the *Mydlach* court on this point.

warranty and that [Mydlach's] claim [was] therefore governed by the tender-of-delivery rule in [Section 2-725(2),]" whereas Mydlach argued that it did "not qualify as an express warranty and that her claim is not subject to the tender-of-delivery rule." *Id*.

[21]    The court then stated,

> Section 2–313 of the UCC explains how express warranties are created.
>
>> "Express warranties by the seller are created as follows:
>>
>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>>
>> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>>
>> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model." 810 ILCS 5/2-313(1) (West 2006).

The UCC makes plain that an express warranty is related to the quality or description of the goods.[12]

In other words, an express warranty, for purposes of the UCC, obligates the seller to deliver goods that conform to the affirmation, promise, description, sample or model. If a seller delivers conforming goods, the warranty is satisfied. If the seller delivers nonconforming goods, the warranty is breached at that time. Even if the buyer is unaware that the goods, as delivered, do not conform to the seller's affirmation, promise, description, sample or model, the warranty has been breached. Under this scenario, the statutory pronouncement that "[a] breach of warranty occurs when tender of delivery is made" makes perfect sense, and the four-year limitations period commences at that time. See M. Klinger, *The Concept of Warranty Duration: A Tangled Web*, 89 Dick. L. Rev. 935, 939 (1985) ("Section 2-725(2) presumes that all warranties, expressed or implied, relate only to the condition of the goods at the time of sale" and "[a]s a result, the period of limitations begins to run at that time"); L. Garvin, *Uncertainty and Error in the Law of Sales: The Article Two Statute of Limitations*, 83 B.U. L. Rev. 345, 379 (2003) ("Article Two defines a range of express and implied warranties" which "[a]ll go to the quality of the goods at tender").

The warranty in the present case, however, is not related to the quality or description of the goods at tender. It does not warrant that the vehicle will conform to some affirmation, promise,

---

[12] The Act defines "written warranty" as

> any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)(B). This definition is obviously different from that of "express warranty" in Section 2-313, in that it specifically includes promises to repair.

description, sample or model. Rather, the warranty promises only that the manufacturer will repair or replace defective parts during the warranty period.…

Although defendant's warranty qualifies as a "written warranty" under the Act, it is not an "express warranty" under the UCC, and is thus not the type of warranty that can be breached on "tender of delivery".[13] Accordingly, we reject defendant's argument that the four-year limitations period for breach of the repair warranty commenced upon delivery of the Dodge Neon in 1996 …..

Our conclusion that the repair warranty is not a UCC express warranty, and thus not subject to the tender-of-delivery rule set forth in the second sentence of [Section 2-725(2), does not render [Section 2-725(2)] irrelevant for purposes of determining when the limitations period began on plaintiff's claim under [the Act]. The first sentence of [Section 2-725(2)] remains applicable. The first sentence states: "[a] cause of action accrues *when the breach occurs*, regardless of the aggrieved party's lack of knowledge of the breach." (Emphasis added.) Although the UCC does not expressly state when the breach of a repair promise occurs, we may refer to the law that exists outside of the UCC. See 810 ILCS 5/1-103 (West 2006) ("Unless displaced by the particular provisions of this Act, the principles of law and equity shall supplement its provisions");[14] L. Lawrence, *Lawrence's Anderson*

---

[13] *Contra Carpetland U.S.A. v. Payne*, 536 N.E.2d 306, 308 (Ind. Ct. App. 1989) (concluding that salesman's verbal promise to replace carpet if "anything went wrong" within one year was "sufficient to create an express warranty" under Section 2-313). We respectfully disagree with the *Carpetland* court's analysis because it fails to account for the plain language of Section 2-313, i.e., a carpet cannot "conform" to a promise to replace it.

[14] Indiana Code Section 26-1-1-103 provides,

Unless displaced by the particular provisions of IC 26-1, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause, shall supplement the provisions of IC 26-1.

*on the Uniform Commercial Code* § 2-725:99, at 301 (3d ed. 2001) (because the UCC provides no assistance as to when a nonwarranty breach of contract "occurs" for purposes of computing the limitations period, "it is necessary to resort to the general non-Code law of contracts," which "has not been displaced by the Code and therefore continues in force").

Generally, "[w]hen performance of a duty under a contract is due any non-performance is a breach." Restatement (Second) of Contracts § 235, at 211 (1979). Performance under a vehicle manufacturer's promise to repair or replace defective parts is due not at tender of delivery, but only when, and if, a covered defect arises and repairs are required. In that event, if the promised repairs are refused or unsuccessful, the repair warranty is breached and the cause of action accrues, triggering the four-year limitations period. See [line of Illinois cases]. See also *Monticello v. Winnebago Industries, Inc.*, 369 F. Supp. 2d 1350, 1356-57 (N. D. Ga. 2005) (under Georgia law, a written warranty that provides for repair or replacement of parts is breached when the purchaser returns the product to the dealer for repair and repair is refused or unsuccessful); *Poli* [*v. DaimlerChrysler Corp.*, 793 A.2d 104, 110-11 (N.J. Super. Ct. 2002)] (under New Jersey law, cause of action for breach of seven-year/70,000-mile power-train warranty would not have accrued when the car was delivered, but rather when persistent problems appeared or when DaimlerChrysler was unable to repair the defect); *Long Island Lighting Co. v. Imo Industries Inc.*, 6 F.3d 876, 889-90 (2d Cir. 1993) (under New York law, cause of action for breach of a repair promise accrued when the generator malfunctioned and the seller refused to make the necessary repairs).[15]

---

[15] *See also Brown v. Gen'l Motors Corp.*, 14 So. 3d 104, 108-13 (Ala. 2009) (concluding that promise to repair is not express warranty under UCC and that cause of action for breach accrues when manufacturer fails or refuses to repair ); *Grosse Pointe Law Firm, P.C. v. Jaguar Land Rover N. Am. LLC*, 894 N.W.2d 700, 703-07 (Mich. Ct. App. 2016) (same), *appeal denied* (2017); Jacqueline R. Kanovitz, *The Seller Fiddles and the Clock Ticks: Seller's Cure and the U.C.C. Statute of Limitations*, 60 NOTRE DAME L. REV. 318, 329-30 (1985) (same).

This is the approach advocated by some commentators. For example, in his discussion of the appropriate treatment of a manufacturer's express warranty to repair or replace defective parts, Professor Lawrence states:

> "The sounder approach is to recognize that the failure to repair or replace is merely a breach of contract and not a breach of warranty, and therefore no cause of action arises until the seller has refused to repair or replace the goods. This is because until the seller has failed or refused to make the repairs or provide a replacement, the buyer, not being entitled to such a remedy, has no right to commence an action for damages. As a result, the action is timely if brought within four years of the seller's failure or refusal." L. Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 2-725:101, at 303 (3d ed. 2001).

Accord L. Garvin, *Uncertainty and Error in the Law of Sales: The Article Two Statute of Limitations*, 83 B.U. L. Rev. 345, 381 (2003).

The correctness of this approach is manifest when we consider consumer claims for breach of repair warranties that run for periods longer than the three years/36,000 miles at issue here. For example, consider the case of a consumer who purchases a vehicle carrying a five-year/50,000-mile repair warranty. If the four-year limitations period commences at "tender of delivery," the limitations period for a breach of the repair promise occurring in year five will expire before the breach even occurs, thus rendering the repair warranty unenforceable during its final year. Statutes of limitations, however, are intended to prevent stale claims, not to preclude claims before they are ripe for adjudication. Even a four-year warranty could be rendered unenforceable if breach of the repair promise occurred near the

end of the warranty period. In that case, the buyer would have only the briefest of periods in which to file suit.

....

We recognize, of course, that a fact question may arise as to the date on which a repair warranty was breached which, in turn, would create some uncertainty as to when the four-year limitations period should commence. Fact questions of this nature, however, frequently arise in cases where the statute of limitations has been pled in defense. Resolution of this type of uncertainty is a classic function of the trier of fact. We therefore reject defendant's argument that commencing the limitations period when the warrantor fails or refuses to repair the defect— rather than at tender of delivery—will create unacceptable uncertainty in the limitations period.

Turning to the facts of this case, the record indicates that plaintiff brought her vehicle to [the dealers] on several occasions beginning in July 1998. At that point, assuming the alleged defects were covered defects, defendant was obligated (through its authorized dealer) to make good on its repair promise. Plaintiff's lawsuit, filed in May 2001, is therefore timely.

*Id.* at 1057-61 (citations and quotation marks omitted).

[22] In our view, the *Mydlach* court's determination that a promise to repair or replace is not an express warranty and that a cause of action for the breach of that contractual obligation does not accrue until the promisor refuses or fails to repair or replace is the only sensible interpretation of such an obligation with

respect to Sections 2-313 and 2-725 of the UCC.[16] The Defendants have consistently maintained that the Plaintiffs' causes of action accrued at tender of delivery and thus have failed to specifically designate any evidence or make any legal argument regarding whether and when an action for breach of the contractual promise to repair or replace accrued.[17]

----

[16] Amendments to the UCC proposed in 2003 defined a promise to repair or replace goods "upon the happening of a specific event" as a "remedial promise," U.C.C. § 2-103(n), and provided that "[f]or breach of a remedial promise, a right of action accrues when the remedial promise is not performed when performance is due." *Id.* § 2-725(2)(c). The official comment regarding Section 2-103(n) stated in pertinent part,

> The distinction between a remedial promise and a warranty that is made in this Article resolves a statute-of-limitations problem. Under original Section 2-725, a right of action for breach of an express warranty accrued at the time the goods were tendered unless the warranty explicitly extended to the future performance of the goods. In that case, the statute of limitations began to run at the time of the discovery of the breach. By contrast, a right of action for breach of an ordinary (non-warranty) promise accrued when the promise was breached. A number of courts held that commitments by sellers to take remedial action in the event the goods proved to be defective during a specified period of time constituted a warranty, and in these cases the courts determined that the statute of limitations began to run at the time that the goods were tendered. Other courts used strained reasoning that allowed them to apply the discovery rule even though the promise referred to the future performance of the seller and not the future performance of the goods.

> Under this Article, a promise by the seller to take remedial action is not a warranty at all and therefore the statute of limitations for a breach of a remedial promise does not begin to run at either the time the goods are tendered or at the time the breach is discovered. Section 2-725(2)(c) separately addresses the accrual of a right of action for a remedial promise.

In *Grosse Pointe*, the Court of Appeals of Michigan used the phrase "remedial promise" to describe the seller's promise to repair or replace. 894 N.W.2d at 707. The proposed amendments were withdrawn in 2011, but that does not diminish the persuasiveness of *Grosse Pointe* (or *Mydlach*) with respect to the existing wording of the UCC.

[17] In support of their summary judgment motion, the Defendants designated two depositions in their entirety (totaling over 400 pages), which is insufficiently specific for purposes of Indiana Trial Rule 56(C). *See Filip v. Block*, 879 N.E.2d 1076, 1081 (Ind. 2008) (noting that Trial Rule 56(C) compels "parties to identify the 'parts' of any document upon which they rely. The Rule thus requires sufficient specificity to identify the relevant portions of a document, and so, for example, the designation of an entire deposition is inadequate."). The Defendants' summary judgment memorandum states that the individual Plaintiffs returned or stopped using their trucks at different times, Appellees' App. Vol. 2 at 6, which suggests that extended factual development may be required to establish the accrual date for each Plaintiff. The mere fact that the Plaintiffs returned or stopped using the trucks is not dispositive of whether the Defendants breached their contractual promise to repair or replace.

[23] One significant factual difference between *Mydlach* and this case is that in addition to promising to repair or replace defective materials or workmanship, the Defendants promised that the trucks would be "free from defects in materials and workmanship during the time and mileage periods set forth in the Warranty Schedule …." Appellants' App. Vol. 3 at 13. This "affirmation of fact or promise" relating to the trucks is an express warranty pursuant to Section 2-313 that arguably was breached upon delivery, as the trucks vibrated excessively from the outset. The Defendants attempted to remedy that breach by replacing the engine mounts, which turned out to be only a temporary fix.

[24] Indiana Code Section 26-1-2-719(2) provides that "[w]here circumstances cause an exclusive or limited remedy" – such as the remedy of repair or replacement in this case – "to fail of its essential purpose, remedy may be had as provided in IC 26-1."[18] At the very least, genuine issues of material fact exist regarding whether and when the exclusive remedy in this case failed of its essential purpose[19] and the Plaintiffs' cause of action for breach of warranty accrued. *See Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 644 (Ind. Ct. App. 2004) (finding genuine issue of material fact regarding whether "exclusive remedy of repair and replacement of defective parts or components fail[ed] of its essential

---

[18] This issue is raised in paragraph 28 of the Plaintiffs' second amended complaint. Appellants' App. Vol. 2 at 87.

[19] By way of example, one court has said that "[a] manufacturer does not have an unlimited time or an unlimited number of attempts to repair an automobile; rather, the limited warranty is breached and/or fails of its essential purpose if successful repairs are not made within a reasonable time or within a reasonable number of attempts." *Dewan v. Ford Motor Co.*, 842 N.E.2d 756, 762 (Ill. App. Ct. 2005), *appeal denied* (2006).

purpose such that [plaintiffs could] seek other remedies" under UCC, where parties disputed whether motor home's steering issues had been fixed), *trans. denied* (2005); *see also Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 366 (5th Cir. 2002) (distinguishing express warranty that product would be free of defects from promise to repair or replace product as remedy for breach of that warranty, and holding that plaintiff's warranty action "did not accrue for the purpose of Section 725, until the promise to repair or replace the [product] failed its essential purpose."); *Fid. & Cas. Co. of New York v. Jasper Furniture Co.*, 186 Ind. 566, 568, 117 N.E. 258, 258 (1917) ("A cause of action accrues, so that limitations begin to run, at the moment its owner has a legal right to sue on it, except where extrinsic facts, postponing the operation of the statute [of limitations], are interposed."); Jacqueline R. Kanovitz, *The Seller Fiddles and the Clock Ticks: Seller's Cure and the U.C.C. Statute of Limitations*, 60 NOTRE DAME L. REV. 318, 330 (1985) ("Under settled principles of limitations act interpretation, an exclusive repair remedy should suspend the running of limitations on the underlying warranty claim until 'failure of essential purpose' activates the buyer's right to seek a judicial remedy.").[20]

---

[20] According to Professor Kanovitz, a "standard new equipment warranty" like the one at issue in this case

> embodies two distinct legal obligations: (1) a warranty that the goods are free from defects in material and workmanship; and (2) a promise to repair part failures. The second promise represents an ordinary contractual commitment and not a warranty. If the goods malfunction during the promised repair period and the seller cannot correct the problem, the seller has now committed two breaches: initially a breach of warranty and later a breach of an ordinary contractual promise. Furthermore, the exclusive repair remedy has failed of its essential purpose; this remedial failure entitles the buyer, for the first time, to litigate the claim.

60 NOTRE DAME L. REV. at 329-30 (footnote omitted).

Of course, the viability of any warranty claim hinges on the duration of the warranty; in other words, a cause of action for breach of warranty must accrue during the warranty period. The Defendants insist that their extension of the original basic vehicle warranty period from one year/100,000 miles to four years/250,000 miles was merely a goodwill gesture with no legal ramifications. We disagree. It is crystal clear that the Defendants intended to make the warranty extension retroactive to the trucks' delivery dates. *See* Appellants' App. Vol. 3 at 11 (Paccar interoffice communication: "The trucks have an original in service date from 11/05 to 01/06. The only option in this is to, in reality; give [the Plaintiffs] a 4 year, 250,000 mile base warranty from their original DIS."). Also, "[i]t is well-settled that when a contract is modified, the original contract still exists and binds the parties as far as it can be followed, and the modifications do not affect the original contract, which still remains in force." *Gerdon Auto Sales, Inc. v. John Jones Chrysler Dodge Jeep Ram*, 98 N.E.3d 73, 81 (Ind. Ct. App. 2018), *trans. denied*.[21] Moreover, "[a]n agreement modifying a contract within IC 26-1-2 needs no consideration to be binding." Ind. Code § 26-1-2-209(1). Accordingly, we conclude as a matter of law that the warranty period at issue is four years/250,000 miles; the question remains

---

[21] The Plaintiffs cite no relevant authority for their proposition that the "Defendants did not incorporate the original warranty in the new modified warranty" and thus a four-year limitation period should apply to a breach of the basic vehicle warranty pursuant to Section 2-725(1). Appellees' Br. at 25. The warranty schedule includes a sixty-month/600,000-mile warranty for cab corrosion, which was still in effect when the Defendants extended the basic vehicle warranty; taken to its logical conclusion, the Plaintiffs' argument would result in different limitation periods for different warranty breaches.

whether the Plaintiffs' cause of action for breach of warranty accrued during that period.

[26] In sum, genuine issues of material fact exist regarding when the foregoing causes of action accrued. Thus, the Defendants have failed to establish as a matter of law that the Plaintiffs' complaint was untimely filed.[22] Therefore, we affirm the trial court's denial of the Defendants' summary judgment motion.

[27] Affirmed.

Robb, J., concurs.

Altice, J., dissents with opinion.

---

[22] While we acknowledge the potential viability of the Plaintiffs' tolling and estoppel theories, we need not determine whether genuine issues of material fact exist regarding the applicability of those theories. We also express no opinion as to the legal effect, if any, of Paccar's and the Dealership's warranty disclaimers. The Defendants make no detailed arguments regarding when the Plaintiffs' remaining causes of action accrued and thus would not be entitled to summary judgment on them in any event.

| Kenworth of Indianapolis, Inc., Kenworth of Indianapolis, Inc. d/b/a ITC Acceptance Company, and Paccar Inc., | Court of Appeals Case No. 49A02-1710-PL-2502 |
|---|---|
| *Appellants-Defendants,* | |
| v. | |
| Seventy-Seven Limited, Convey All, LLC, Keller Trucking, Inc., K&K Aggregate, Inc., Huber Transport, LLC, Triple H Trucking, LLC, and Custom Hauling, Inc., | |
| *Appellees-Plaintiffs* | |

**Altice, Judge, dissenting.**

[28] I respectfully dissent. This is a breach of warranty action. Section 2-725(2)

clearly provides that

> [a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. *A breach of warranty occurs when tender of delivery is made*, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

(Emphasis supplied). Thus, the general rule is that in a breach of warranty action, a cause of action accrues when tender of delivery is made. In drafting this provision, the drafters of the UCC focused on the seller's interest in having a clearly defined limit on the period of its potential liability and found such interest to outweigh the buyer's interest in an extended warranty unless such an extended warranty was part of a specific bargain. *Dart Industries, Inc. v. Adell Plastics, Inc.*, 517 F.Supp. 9, 11 (S.D. Ind. 1980). Indeed, the drafters were fully aware of the difficulties faced by a buyer in determining conformity with a warranty at the time of delivery, but ultimately did not regard such difficulties as controlling. *Id*.

[29] The majority sidesteps the general rule found in Section 2-725 by finding that the promise to repair or replace is not an express warranty under the UCC and thus does not fall within the ambit of Section 2-725. According to the majority, the promise to repair or replace created a separate contractual obligation, which could not be breached until the Defendants either refused or failed to repair or replace the defective trucks.

[30] Here, I find, as did the majority, that the warranty agreement at issue contains an express warranty[23] that the trucks would be "free from defects in materials and workmanship." *Appellants' Appendix Vol. 3* at 13. Section 2-725 clearly provides that a cause of action for breach of this express warranty accrues upon delivery unless the warranty explicitly extends to future performance. In this vein, I agree with the majority insofar as it found that the repair or replace provision does not warrant the future performance of the trucks. *See* Slip op. at 14-15, n.11.

[31] Where I part ways with the majority is that I view the repair or replace provision of the warranty agreement as a limitation of a seller's liability, not as a separate contractual undertaking. In other words, the repair or replacement provision sets forth the exclusive remedy for breach of the express warranty. Thus, in my view, the action remains an action for breach of warranty falling within the purview of Section 2-725. I would hold that because the future performance exception does not apply, the Plaintiffs' cause of action accrued upon delivery of the trucks. I also am not persuaded that the promises and efforts to repair the trucks operated to toll the limitation period.

[32] While the majority rejects the *Ludwig* decision, I find it to be on point and controlling of the outcome in this case. In *Ludwig*, the court was presented with a factual scenario similar to that before us. There, the plaintiff took delivery of

---

[23] Indeed, the majority aptly notes that this is a "significant factual difference" between the case before us and *Mydlach*, the case upon which the majority relies. *Slip op.* at 23.

trucks that immediately proved to be defective. The warranty at issue in *Ludwig* provided for "repair or replacement of parts" as the "only remedy" for breach of the warranty. 510 N.E.2d at 694. Further, the plaintiffs were assured that the problems would be fixed, but subsequent repair efforts proved unsuccessful. Nearly four years and three months after the final trucks were delivered, the plaintiff filed a complaint asserting breach of warranty claims. Given that the action was for breach of warranty, the *Ludwig* court looked directly to Section 2-725(2) and determined that the plaintiff's cause of action accrued upon delivery. Because the complaint was filed more than four years after delivery of the trucks, the *Ludwig* court held that the plaintiff's action was barred.

[33] Numerous other jurisdictions have similarly found that a cause of action for breach of warranty accrues upon delivery even where the warranty provides for repair or replacement as the exclusive remedy. In each case, the courts found that the repair or replacement warranty merely provided a remedy if the product became defective. *See Joswick v. Chesapeake Mobile Homes, Inc.,* 747 A.2d 214 (Md. App. 2000); *Nebraska Popcorn, Inc. v. Wing,* 602 N.W.2d 18 (Neb. 1999); *Hull v. Moore's Mobile Homes Stebra, Inc.*, 214 A.D.2d 923 (N.Y. App. Div. 1995); *Boyd v. A.O. Smith Harvestore Products, Inc.*, 776 P.2d 1125 (Colo. Ct. App. 1989); *Carabello v. Crown Controls Corp.,* 659 F.Supp. 839 (D. Colo. 1987); *City of Cincinnati, Ohio v. Dorr-Oliver, Inc.*, 659 F.Supp. 259 (D. Conn. 1986); *Ontario Hydro v. Zallea Systems, Inc.*, 569 F.Supp. 1261 (D. Del. 1983); *Poppenheimer v. Bluff City Motor Homes, Div. of Bluff City Buick Co.*, 658 S.W.2d 106 (Tenn. Ct.

App. 1983); *Zahler v. Star Steel Supply Co.*, 213 N.W.2d 269 (Mich. App. 1973)[24]. In short, in none of these cases did the court consider the repair or replacement provision to be a separate contractual undertaking subject to its own, separate accrual analysis outside of Section 2-725.

[34] The *Ludwig* decision also provides guidance as to how Indiana views promises and efforts to replace defective products with regard to tolling the limitation period set forth in Section 2-725.[25] The *Ludwig* court noted:

> Some jurisdictions have found that repair promises or efforts will toll the statute of limitations. *E.g., Louisville Silo and Tank Co. v. Thweatt* (1927), 174 Ark. 437, 295 S.W. 710 (statute tolled so long as vendor insists defect can be repaired and is attempting to do so); *Southern California Enterprises, Inc. v. D.N. and E. Walter and Co.* (1947), 78 Cal.App.2d 750, 178 P.2d 785 (limitations statute applicable to breach of warranty action tolled while vendor claims defect can be cured and is attempting to do same); *Gaffney v. Unit Crane and Shovel Corp.* (1955), 49 Del. 381, 117 A.2d 237 (recognizing rule that statute is tolled where seller's promises rise to level of an assurance goods will be made to conform to warranty). However, other jurisdictions maintain that a seller's assurances that a chattel not in compliance with its warranty will be corrected, and his attempts to make such repairs, do not toll the statute of limitations applicable to an action for breach of warranty. *Triangle Underwriters, Inc. v. Honeywell, Inc.* (E.D.N.Y. 1978), 457 F.Supp. 765, 771 (argument of tolling based on repair

---

[24] The trial court relied upon the dissent in *Zahler* in finding that the Defendants' promises and efforts to repair the trucks tolled the running of the statute of limitations.

[25] The *Ludwig* court found that the buyer waived the issue of equitable estoppel by failing to present it to the trial court in the first instances and that there was no evidence of fraudulent concealment so as to toll the limitations period.

"has been rejected by the majority of jurisdictions"), *aff'd on this holding*, *rev'd on other grounds* (2d Cir. 1979), 604 F.2d 737, 743 (attempts by seller to remedy defects giving rise to cause of action did not toll UCC's four year period of limitations). *See e.g.*, *Hartford Mutual Ins. Co. v. Seibels, Bruce and Co.* (D. Md. 1984), 579 F.Supp. 135, 138 (attempts to repair do not toll statute of limitations); *Ontario Hydro v. Zallea Systems, Inc.* (D.C. Del. 1983), 569 F.Supp. 1261 (mere attempt by seller to remedy defects giving rise to cause of action does not toll statute of limitations); *Binkley Co. v. Teledyne Mid-America Corp.* (E.D. Mo. 1971), 333 F.Supp. 1183, *aff'd* (8th Cir.1972), 460 F.2d 276 (seller's attempts to repair did not toll statute of limitations regarding express and implied warranties); *Tomes v. Chrysler Corp.* (1978), 60 Ill.App.3d 707, 18 Ill. Dec. 71, 377 N.E.2d 224 (efforts to repair do not toll the statute); *Smith v. Ford Motor Co.* (1978), 59 Ohio App.2d 41, 392 N.E.2d 1287 (mere attempt by seller to remedy defects giving rise to cause of action does not toll statute of limitations); *Poppenheimer v. Bluff City Motor Homes* (1983), Tenn.App., 658 S.W.2d 106 (breach of warranty occurs upon tender of delivery and seller's attempts to cure defects do not toll statute of limitations); *Bishop-Babcock-Becker Co. v. Jennings* (1922), Tex. Civ. App., 245 S.W. 104 (statute of limitations not interrupted by seller's assurances or attempts to remedy defects).

*Id*. at 698-99. In rejecting the plaintiff's claim that the seller's assurances and repair efforts did not toll the limitation period set forth in Section 2-725, the *Ludwig* court noted that the plaintiff was aware of the warranty when the trucks were delivered; that the trucks immediately suffered mechanical problems; that two engines had been repaired while still under warranty; and that repair representations had been made long before the limitations period ran. Under these circumstances, the *Ludwig* court stated that the owner of the trucking company could not claim that "the[] repairs lulled him into inaction and

delayed his filing of this suit." *Id*. The *Ludwig* court therefore found that the trial court did not err in determining that Section 2-725 barred the trucking company's claim for breach of warranty.

[35] As was the case in *Ludwig*, the Plaintiffs here were aware of the four-year limitation period; discovered the vibration issue immediately after delivery; knew that repair efforts had failed or were short-lived; and before the expiration of the extended warranty period, were aware that there was no permanent fix.[26] Under these circumstances, I would conclude that the cause of action accrued upon delivery of the trucks and that the Plaintiffs' complaint filed four years and nine months later is barred. This is consistent with the overall purpose of the UCC to establish a uniform statute of limitations for sales contracts eliminating jurisdictional variations and providing relief for companies doing business on a nationwide scale. It is also in line with the UCC's emphasis on the seller's need to have a clearly defined limit on the period of its potential liability over the buyer's interest in an extended warranty.

---

[26] The Plaintiffs do not claim that the Defendants refused to carry out their promise to replace the engine mounts for as long as the Plaintiffs owned the trucks. From the record, it can be inferred that such refusal, if at all, occurred only after the Plaintiffs filed the instant action.

[36]     I thus would hold that the Defendants are entitled to judgment as a matter of law.  I would reverse the trial court and remand with instructions to grant summary judgment in favor of the Defendants.[27]

---

[27] To the extent there may be a factual dispute, such does not affect my determination that the cause of action accrued on delivery and that the four-year limitation period had expired before the Plaintiffs filed the instant action.